12 Cal.Rptr.3d 828 (2004)
118 Cal.App.4th 220
ESTATE OF Laura Marie LOWRIE, Deceased.
Lynelle L. Goodreau, Petitioner and Respondent,
v.
Sheldon Lawrence Lowrie, as Trustee, etc., Objector and Appellant.
No. B159305.
Court of Appeal, Second District, Division Three.
April 30, 2004.
*829 Michael Robert Bassin, Encino, for Objector and Appellant.
Law Offices of Philip Kaufler and Philip Kaufler, for Petitioner and Respondent.
Certified For Partial Publication.[*]
ALDRICH, J.

I.

INTRODUCTION
In this case, a granddaughter accuses her uncle of financial abuse, isolation, and neglect constituting elder abuse of her grandmother.
In the published sections of this opinion (sections I, II, IIIA, and IV) we hold that the granddaughter has standing to bring this elder abuse civil lawsuit. (Welf. & Inst.Code, § 15657, subd. (d).) In unpublished portions of this opinion (sections IIIB, IIIC, IIID, IIIE, and IIIF) we hold there is substantial evidence to support the findings of elder abuse, there is substantial evidence to support the damages awarded, and there is no procedural impediment to the imposition of punitive damages.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. The parties and decedent's estate plan.

Laura Marie Lowrie (decedent) had three children, all of whom are still living: *830 Norma Goodreau, Alan Lowrie, and appellant Sheldon Lawrence Lowrie (Sheldon). Decedent had six grandchildren, including respondent Lynelle Goodreau (Lynelle) who was the eldest daughter of Norma Goodreau.[1]
Decedent's husband died in 1986, leaving to decedent gold coins, cash in bank accounts, a number of pieces of commercial property, and two single family residences located in Burbank, California. Decedent's husband also left to decedent an airplane parts business, SAL Instruments (SAL), located in Burbank. Decedent lived in the residence located on Kenwood Street. The second residence, on Edison Boulevard, was the house where Lynelle had lived with her grandparents when Lynelle was an infant. During this time, Lynelle and decedent developed a special bond.
After his father died, Sheldon started to run SAL. Alan assisted by doing the bookkeeping.
Decedent executed a will in 1988 and a revised will in January 1989. On March 20, 1989, decedent reformulated her estate plan and executed a will (pour over) and a trust, the effect of which placed most of her real and personal property in trust. On March 19, 1992, decedent, amended the trust.
In the March 1989, estate documents, Sheldon was named as the executor, Lynelle was designated as the successor executor, decedent was designated as the trustee, Sheldon was designated as the first successor trustee, and Lynelle was designated as the second successor trustee. Additionally, Alan Lowrie and Norma Goodreau each were bequeathed the sum of $10,000 and Lynelle was to receive the Edison Boulevard residence. Sheldon was bequeathed the remainder of the estate (which would be the bulk of the property), and if Sheldon did not survive decedent, Lynelle was to receive the remainder.[2] The 1992 trust amendment was a one-page document which deleted the bequest to Lynelle of the house and replaced it with a monetary bequest of $10,000.
Unbeknown to others, decedent transferred the Edison Boulevard residence and the Kenwood Street residence to Sheldon in 1993 and 1995, respectively. In 1993, decedent transferred all of her personal property to Sheldon.
In August 1997, decedent resigned as trustee of her trust and Sheldon became trustee.
Decedent died on August 13, 1999, at the age of 89. At the time of her death, decedent's estate was worth approximately $1 million.

B. Procedure.

1. The petition.

On November 1, 2000, Lynelle filed a multiple-part petition (BP064664) challenging the March 19, 1992, trust amendment, seeking findings and damages for elder abuse, and requesting an order pursuant to Probate Code section 259 disinheriting Sheldon. Lynelle contended, among other allegations, that Sheldon exploited his relationship with decedent, and through manipulation, fraud and undue influence enticed decedent to gift him property and to change her estate plan so Sheldon would receive substantially all of *831 decedent's assets. Further, Sheldon abused decedent physically and financially, and intentionally isolated decedent. Lynelle alleged that over the years, "Sheldon isolated Decedent from her two other children, her five grandchildren and from most of the outside world. Sheldon intentionally prevented Decedent from seeing or speaking with family members and other people and denied family members and others access to Decedent's house by among others: duct taping her telephones so that she could not receive or make telephone calls; by locking her metal security door from the outside so that decedent could not open her front door to leave the house and so that she could not allow in visitors such as family members; and by affixing a sign to her door which stated: `DAY SLEEPER, DO NOT DISTURB!! NO SOCIAL WORKERS. NO PEDDLERS. WILL NOT ANSWER DOOR.'" The complaint also alleged that Sheldon denied and delayed medical care to decedent and failed to assist her with personal hygiene.
Among other relief, Lynelle sought to void the 1992 trust amendment, to set aside the transfer of real property, compensatory and punitive damages, a finding pursuant to Probate Code section 259 that Sheldon was deemed to have predeceased decedent and thus was not entitled to inherit the remainder of decedent's estate, imposition of a constructive trust, attorney fees, and costs.

2. The trial, the judgment, and the appeal.

Prior to trial, the trial court rejected Sheldon's argument that Lynelle had no standing to bring this case for elder abuse.
A bifurcated trial was held before the court. At the end of the first phase of the trial, the court found, by clear and convincing evidence, that Sheldon was guilty of elder abuse by reason of neglect, isolation, and financial abuse. In that Sheldon was found to be liable for elder abuse, the trial court found that Sheldon was disinherited from decedent's estate (Prob.Code, § 259). The trial court made a specific finding that Sheldon acted with recklessness, oppression, fraud and malice, entitling Lynelle to attorney fees and punitive damages. (Welf. & Inst.Code, § 15657; Civ.Code, § 3294.) Damages were awarded to Lynelle as follows: $250,000 for pain and suffering; $665,623 for financial abuse; attorney's fees to be determined upon written motion; and punitive damages to be based upon proof of Sheldon's net worth.
Thereafter, a hearing before the court was held on the issues of attorney fees, costs, and punitive damages. The trial court found that "during the pendency of this action, [Sheldon] intentionally and systematically liquidated virtually all of his assets and the assets of the trust (of which [Sheldon] was the sole beneficiary) prior to completion of this trial . . . so that his assets would be unavailable for execution by [Lynelle] as a potential judgment creditor of [Sheldon]." The trial court awarded Lynelle $392,621.20 in attorney fees, $32,406.37, in costs, and $50,000 for punitive damages.
A judgment was entered awarding $665,623 for financial abuse, $250,000 for pain and suffering, $392,621.20 in attorney fees, $32,406.37 in costs, and $50,000 for punitive damages, disinheriting Sheldon from decedent's trust (Prob.Code, § 259), and other relief. Sheldon appeals.

III.

DISCUSSION

A. Lynelle has standing to pursue this elder abuse case.

Sheldon asserts that Lynelle has no standing to bring this elder abuse case. *832 This argument ignores the legislative purpose of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst.Code, § 15600 et seq.), the Elder Abuse Act) and Probate Code section 259. If accepted, this argument would create opportunities for abusers to benefit from their wrongful conduct.

1. The Elder Abuse Act and the Standing Provision, Welfare and Institutions Code section 15657.3, subdivision (d).

"The purpose of the [Elder Abuse Act, (Welf. & Inst.Code, § 15600 et seq.)] is essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (Delaney v. Baker (1999) 20 Cal.4th 23, 33, 82 Cal.Rptr.2d 610, 971 P.2d 986; Buhai & Gilliam, Honor Thy Mother and Father: Preventing Elder Abuse Through Education and Litigation (2003) 36 Loyola L.A. L.Rev. 565, 569.)
Originally, the Elder Abuse Act was designed to encourage the reporting of abuse and neglect of elders and dependent adults. (Delaney v. Baker, supra, 20 Cal.4th at p. 33, 82 Cal.Rptr.2d 610, 971 P.2d 986; Covenant Care, Inc. v. Superior Court (2004) 32 Cal.4th 771, 779, 11 Cal.Rptr.3d 222, 86 P.3d 290; ARA Living Centers-Pacific, Inc. v. Superior Court (1993) 18 Cal.App.4th 1556, 1559, 23 Cal.Rptr.2d 224 (ARA Living Centers).) It also provided for criminal prosecution of such cases. (E.g., Pen.Code, § 368.) However, elder abuse lawsuits were seldom pursued as few attorneys would handle the cases, partially because survival statutes did not permit compensation if the elder died before a verdict was rendered.[3] Then, the Legislature shifted the focus. The statutory scheme was modified to provide incentives for private, civil enforcement through lawsuits against elder abuse and neglect. (Covenant Care, Inc. v. Superior Court, supra, at p. 779, 11 Cal.Rptr.3d 222, 86 P.3d 290; Delaney v. Baker, supra, at p. 33, 82 Cal.Rptr.2d 610, 971 P.2d 986; ARA Living Centers, supra, at p. 1560, 23 Cal.Rptr.2d 224.)
Subject to statutory criteria and limitations, the statutory scheme now permits heightened remedies. These include pain and suffering damages even after the abused elder dies, punitive damages, and attorney fee awards. (Welf. & Inst.Code, § 15657; Covenant Care, Inc. v. Superior Court, supra, 32 Cal.4th at pp. 778-780, 11 Cal.Rptr.3d 222, 86 P.3d 290; Delaney v. Baker, supra, 20 Cal.4th at pp. 33, 35, 82 Cal.Rptr.2d 610, 971 P.2d 986; Moskowitz, Golden Age in the Golden State: Contemporary Legal Developments in Elder Abuse and Neglect (2003) 36 Loyola L.A. L.Rev. 589, 605-606.)[4]
*833 Welfare and Institutions Code section 15657.3, subdivision (d), delineates who has standing to bring an elder abuse lawsuit after the death of an elder or dependent adult. Welfare and Institutions Code section 15657.3, subdivision (d) states: "Upon petition, after the death of the elder or dependent adult, the right to maintain an action shall be transferred to the personal representative of the decedent, or if none, to the person or persons entitled to succeed to the decedent's estate."
The Legislature did not define the operative words in Welfare and Institutions Code section 15657.3, subdivision (d). However, when Welfare and Institutions Code section 15657.3 was added to the statutory scheme (Stats.1991, ch. 774 (Sen. Bill No. 679), § 3) the Legislature specified that the Elder Abuse Act was intended to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (Welf. & Inst.Code, § 15600, subd. (j), italics added; added by Stats.1991, ch. 774 (Sen. Bill No. 679), § 2.) This statement of legislative intent suggests the Legislature intended a broad definition of standing in the context of elder abuse cases.[5]

2. Lynelle has standing.

Sheldon argues Lynelle does not have standing because: (1) under the trust he is the named trustee and thus, decedent's "personal representative" (citing Prob.Code, § 58)[6]; and, (2) Lynelle is not a person "entitled to succeed to the decedent's estate" because she does not succeed to decedent's estate under the laws of intestate succession (Prob.Code, § 6402)[7], but rather, Lynelle is simply a beneficiary who was bequeathed $10,000. Sheldon points to provisions of the survival statutes (Code Civ. Proc., § 377.30)[8] and the wrongful death statutes (Code Civ. Proc., § 377.60.),[9] as well as the definition of "decedent's successor in interest" prescribed *834 for those purposes. (Code Civ. Proc., § 377.11.)[10] These statutes use language similar to that in Welfare and Institutions Code section 15657.3. According to Sheldon, only Norma and Alan, decedent's other surviving children, have standing to bring this elder abuse case. (See fn. 7.) However, establishing a uniform definition of terms throughout the codified laws is less important than effectuating the purpose of the legislative scheme. (Covenant Care, Inc. v. Superior Court, supra, 32 Cal.4th at p. 782, 11 Cal.Rptr.3d 222, 86 P.3d 290.)
Sheldon's argument ignores Probate Code section 259 and the purpose of the Elder Abuse Act.
Probate Code section 259 is a forfeiture statute that deems abusers of elders or dependent adults to have predeceased a deceased, abused elder or dependent adult.[11]
The purpose of Probate Code section 259 was to deter the abuse of elders by prohibiting abusers from benefiting from the abuse. (Note, Extinguishing Inheritance Rights: California Breaks New Ground in the Fight Against Elder Abuse But Fails to Build an Effective Foundation (2001) 2 Hastings L.J. 537, 569; Civ.Code, § 3517 ["No one can take advantage of his own wrong."]; cf. Prob.Code, § 250 [killer of decedent not entitled to benefit under decedent's will or trust].) Probate *835 Code section 259 was enacted, like other forfeiture statutes, to produce a fair and just result. By enacting this statute, the Legislature hoped that the threat of extinguishing inheritance rights, and the financial incentive to others to report abuse, would deter abuse. (Moskowitz, Golden Age in the Golden State: Contemporary Legal Developments in Elder Abuse and Neglect, supra, 36 Loyola L.A. L.Rev. at pp. 653-656; Note, supra, 2 Hastings L.J. at pp. 572-573.)
According to decedent's estate plan, if Sheldon predeceased decedent, Lynelle would become the successor trustee and the successor beneficiary to the remainder. Thus, Lynelle would become the person entitled to succeed to decedent's estate and Lynelle would have standing to bring this case. (Prob.Code, § 48, subd. (b) ["interested person" determined according to particular purposes of proceeding]; Prob.Code, § 24, subd. (b) [as relates to trust, beneficiary means persons who have present, future, or contingent interest]; Prob.Code, § 250, subd. (b)(3) [provisions in will or trust nominating killer as executor, trustee, guardian, or conservator interpreted as if killer predeceased decedent]; Estate of Plaut (1945) 27 Cal.2d 424, 428-429, 164 P.2d 765 [beneficiary under earlier will interested party and may contest later will; prima facie showing of contestant's contingent interest sufficient]; Estate of O'Brien (1966) 246 Cal.App.2d 788, 55 Cal.Rptr. 343 [person named as a beneficiary under a later will whose interest may be impaired by probating an earlier will is an "interested person" who has pecuniary interest in estate that may be impaired or defeated by probate of the earlier will or benefited by having it set aside].)
Standing for purposes of the Elder Abuse Act must be analyzed in a manner that induces interested persons to report elder abuse and to file lawsuits against elder abuse and neglect. In this way, the victimized will be protected. Here, Lynelle's expectancy, i.e., her contingent interest, provides her with a strong incentive to pursue this action and gives her standing.
Sheldon argues Probate Code section 259 is irrelevant because disinheritance under the statute occurs only after a person is found to have been guilty of elder abuse, but standing must exist at the time the action is filed. (Code Civ. Proc., § 430.10; [demurrer]; Cloud v. Northrop Grumman Corp. (1998) 67 Cal.App.4th 995, 1004, 79 Cal.Rptr.2d 544 [complaint filed by person without standing may be challenged by demurrer]; e.g., Estate of Lind (1989) 209 Cal.App.3d 1424, 257 Cal.Rptr. 853.) Were we to accept this rigid view, the purposes of the Elder Abuse Act could be eviscerated. Any definition given to Welfare and Institutions Code section 15657.3, subdivision (d) must be sufficiently elastic to fulfill the purposes of the Elder Abuse Act. A decision as to whether a person has standing may be intertwined with other issues in elder abuse cases. This approach is consistent with the one taken to determine who is an interested person entitled to file petitions for probate. (Prob.Code, § 48 [defining standing to file probate petition requires flexible approach]; Prob.Code, § 8000, subd. (a); Arman v. Bank of America (1999) 74 Cal.App.4th 697, 701, 88 Cal.Rptr.2d 410 [under the Probate Code, who is an interested person for purposes of standing is fluid concept and is often necessary to resolve the substantive claim to the parties' relationship prior to deciding standing issue]; 2 Cal. Civil Practice: Probate & Trust Proceedings (2000) Standing, § 10:8, p. 10 [issue of standing in probate proceeding ordinarily determined before other issues, but court not required to follow this procedure].)
*836 Sheldon's assertion that only he (as the trustee and personal representative) and Norma and Alan (as decedent's children) have standing is based upon an unduly restrictive interpretation leading to an unwarranted result.
"Elders are uniquely vulnerable to abuse because . . . they face advancing frailty, deterioration of mental capacity, and increasing reliance for assistance upon the families they raised." (Note, A New Approach to Fighting Elder Abuse in America, supra, 2 Hastings L.J. at pp. 571-572, fn. omitted.) Elders frequently relinquish control to those who have gained their trust, becoming emotionally and financially dependent. In such circumstances, abusers become the elder or dependent adult's trustee or executor and primary beneficiary. For example, most financial abuse is perpetrated by one person, usually a family member, or other trusted person. (Finberg, Financial Abuse of the Elderly in California (2003) 36 Loyola L.A. L.Rev. 667.)
Courts must interpret the standing provision in Welfare and Institutions Code section 15657.3, subdivision (d) to deter, not encourage such abuse. If abusers gain control of an estate, they may not use a restrictive interpretation of standing as an escape hatch. In order to effectuate the purposes of the Elder Abuse Act and Probate Code section 259, standing must be given to Lynelle, who is the successor representative of decedent's estate. Any other conclusion would discourage interested persons from bringing elder abuse lawsuits and would ignore the legislative scheme.
Granting Lynelle standing is also supported by the analogous case of Olson v. Toy (1996) 46 Cal.App.4th 818, 54 Cal.Rptr.2d 29. In Olson, plaintiffs brought an action to declare a trust invalid alleging that "defendants, using undue influence, took advantage of decedent's senility and induced her to execute a trust in their favor." (Id. at p. 823, 54 Cal.Rptr.2d 29.) Plaintiffs were heirs at law and entitled to inherit under decedent's will. Defendant Toy was the decedent's personal representative and the trustee of the trust. (Id. at p. 824, 54 Cal.Rptr.2d 29.) Although the general rule was that an executor and administrator was the proper party to sue on behalf of the estate (id. at pp. 823-824, 54 Cal.Rptr.2d 29), Olson held that the plaintiffs had standing. Olson reasoned as follows, "Toy could hardly be expected on behalf of the estate to initiate an action to declare invalid the trust which she administers as trustee." (Id. at p. 824, 54 Cal.Rptr.2d 29.) Likewise, Sheldon, as the trustee and major beneficiary of the trust, cannot be expected to bring an elder abuse lawsuit against himself.
Lynelle has standing to pursue the elder abuse case against Sheldon.[12]
B.-F.[**]

IV

DISPOSITION
The judgment is affirmed. Sheldon Lowrie is to pay all costs on appeal.
We concur: KLEIN, P.J., and CROSKEY, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of sections IIIB, IIIC, IIID, IIIE, and IIIF.
[1] To avoid confusion, we use the first names. We mean no disrespect thereby.
[2] Section 3.4 of the 1989 trust provides: "The trustee shall distribute the remainder of the trust estate to settlor's son, [Sheldon Lowrie], if he survives settlor. If he does not survive settlor, the trustee shall distribute the remainder of the trust estate to settlor's granddaughter, [Lynelle Goodreau]."
[3] Survival statutes (Code Civ. Proc., § 377.20 et seq.) seek damages for a decedent's injuries and harm sustained prior to the death of the decedent. Recovery becomes an asset of the decedent's estate. (Cal. Elder Law Litigation: An Advocate's Guide (Cont.Ed.Bar 2003) § 6.46, p. 411; Ross, Cal. Practice Guide, Probate (The Rutter Group 2003)[¶] 15:280, p. 15-78 et seq.) In general, survival statutes do not provide recovery of pain and suffering if the plaintiff dies. (Ross, Cal. Practice Guide, Probate, supra, [¶] 15:284, p. 15-78.2; Cal. Elder Law Litigation: An Advocate's Guide, supra, § 6.47, pp. 411-412.)

Survival statutes are not to be confused with wrongful death statutes (Code Civ. Proc., § 377.60 et seq.) that prescribe actions that belong to the "decedent's heirs and other specified relations [ ] and [are] meant to compensate them for their own losses resulting from the decedent's death." (Cal. Elder Law Litigation: An Advocate's Guide, supra, § 6.46, p. 411; accord, Ross, Cal. Practice Guide, Probate, supra, [¶] [¶] 15:280, p. 15-78, 15:292, p. 15-78.13 et seq.)
[4] "In order to obtain the [Elder Abuse] Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages. (Compare Welf. & Inst.Code, § 15657 [requiring `clear and convincing evidence that a defendant is liable for' elder abuse and `has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse'] with Civ.Code, § 3294, subd. (a) [requiring `clear and convincing evidence' that the defendant has been guilty of oppression, fraud, or malice].)" (Covenant Care, Inc. v. Superior Court, supra, 32 Cal.4th at p. 788, 11 Cal.Rptr.3d 222, 86 P.3d 290; Buhai & Gilliam, Honor Thy Mother and Father: Preventing Elder Abuse Through Education and Litigation, supra, 36 Loyola L.A. L.Rev. at pp. 570-571.)
[5] There are a number of definitions of "interested person" in the Probate Code (e.g., Prob.Code, § 1424 [with regard to guardianship and conservatorship law]; Prob.Code, § 354 [for purposes of the fiduciaries' wartime substitution law]; Prob.Code, § 7280 [with regard to the United States Government]), but none is contained in the Elder Abuse Act.
[6] Probate Code section 58 defines "personal representative" as "executor, administrator, administrator with the will annexed, special administrator, successor personal representative, or a person who performs substantially the same function under the law of another jurisdiction governing the person's status."
[7] Under the laws of intestate succession, a grandchild inherits only if there are no living children. (Prob.Code, § 6402.) Here, in addition to Sheldon, decedent was survived by two living children (Norma and Alan).
[8] Code of Civil Procedure section 377.30 reads in part: "A cause of action that survives the death of the person . . . may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."
[9] Code of Civil Procedure section 377.60 reads in part: "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: [¶] (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession."
[10] Code of Civil Procedure section 377.11 reads: "For purposes of this chapter, `decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."
[11] Probate Code section 259 reads in part:

"(a) Any person shall be deemed to have predeceased a decedent to the extent provided in subdivision (c) where all of the following apply:
"(1) It has been proven by clear and convincing evidence that the person is liable for physical abuse, neglect, or fiduciary abuse of the decedent, who was an elder or dependent adult.
"(2) The person is found to have acted in bad faith.
"(3) The person has been found to have been reckless, oppressive, fraudulent, or malicious in the commission of any of these acts upon the decedent.
"(4) The decedent, at the time those acts occurred and thereafter until the time of his or her death, has been found to have been substantially unable to manage his or her financial resources or to resist fraud or undue influence.
"(b) Any person shall be deemed to have predeceased a decedent to the extent provided in subdivision (c) if that person has been convicted of a violation of Section 236 of the Penal Code or any offense described in Section 368 of the Penal Code.
"(c) Any person found liable under subdivision (a) or convicted under subdivision (b) shall not (1) receive any property, damages, or costs that are awarded to the decedents estate in an action described in subdivision (a) or (b), whether that person's entitlement is under a will, a trust, or the laws of intestacy; or (2) serve as a fiduciary as defined in Section 39, if the instrument nominating or appointing that person was executed during the period when the decedent was substantially unable to manage his or her financial resources or resist fraud or undue influence. This section shall not apply to a decedent who, at any time following the act or acts described in paragraph (1) of subdivision (a), or the act or acts described in subdivision (b), was substantially able to manage his or her financial resources and to resist fraud or undue influence within the meaning of subdivision (b) of Section 1801 of the Probate Code and subdivision (b) of Section 39 of the Civil Code."
[12] As Lynelle has standing, we need not address other situations that might arise, nor must we further define the parameters of standing in Welfare and Institutions Code section 15657.3, subdivision (d). Thus, we need not address whether Norma, Alan, or anyone else also has standing to bring this case.
[**] See footnote *, ante.