Filed 3/25/16  Taylor v. Finley CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THERESA TAYLOR, as Special Administrator, etc., | B249399 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC467145) |
| v. | |
| CHRISTOPHER FINLEY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roy L. Paul, Judge.  Affirmed.

Law Offices of Ephraim O. Obi and Ephraim O. Obi, for Plaintiff and Appellant.

Law Offices of John F. Nicholson and John F. Nicholson, for Defendant and Respondent.

_____

Theresa Taylor, special administrator of the estate of her late father, Tommie Taylor, appeals from the grant of summary judgment in favor of her nephew, respondent Christopher Finley. We conclude the complaint is barred by the statute of limitations, and appellant has failed to raise a genuine issue of material fact on her claims of elder abuse, constructive fraud and undue influence. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Respondent and his siblings were raised by decedent after the death of their mother. In 2006, when decedent was 96 years old, he sold his house for close to $350,000 and moved to an assisted living facility. Respondent took decedent to attorney John Nicholson's office, where a will and trust were prepared. Respondent was named executor and trustee, as well as chief beneficiary of decedent's will and trust, except for $35,000, which was to be divided among decedent's two surviving daughters and his other five grandchildren. Durable powers of attorney for healthcare and financial management also were prepared at the time. The proceeds from the sale of decedent's house were deposited in a joint Bank of America account in the names of decedent and respondent. The account was used to pay for decedent's expenses, as well as to fund respondent's construction business. The funds were depleted by the time decedent died in September 2008.

Sometime in April or early May 2007, appellant accused respondent of manipulating decedent, coercing him to sell his house, and using the sale proceeds for his own personal gain. In the spring of 2008, appellant reported her suspicions of elder abuse to the authorities. Subsequently, attorney Nicholson, on behalf of decedent, obtained a restraining order against appellant.

In April 2010, appellant petitioned to open probate and to administer decedent's estate. In November 2010, she received special letters of administration to investigate whether the estate had any assets. In May 2011, appellant filed a petition against respondent in the estate case. The petition asserted claims for financial elder abuse, fraud, undue influence and declarative relief, but cited Probate Code section 17200,

2

which governs trust proceedings. In July 2011, the probate court sustained respondent's demurrer to the elder abuse petition with 10-day leave to amend, declined to open probate, and instead granted appellant special letters to pursue an action against respondent. The court explained that the elder abuse petition was improperly filed as a trust action in the decedent's estate case without alleging a trust. The court was unsure whether the petition would "end[] up, in the decedent's estate or civil or trust."

Meanwhile, in June 2011, appellant filed a police report against respondent for financial elder abuse. The report was investigated by Chris Henning of the Los Angeles County Sheriff's Department who spoke to a manager at Bank of America. The manager verified that both decedent and respondent had been present for the opening of the joint account, and both their signatures appeared on the account signature card. The manager stated that any suspicious account activity would have been reported to adult protective services.

The owner of the company that had provided decedent with assisted living services told Detective Henning that respondent had not exerted undue influence over decedent, and that appellant's relationship with decedent had been strained. Attorney Nicholson informed the detective that decedent had funded respondent's renovations of old homes; the investment was lost when the real estate market collapsed. Bank statements and checks drawn on the joint account showed expenditures for construction supplies and work consistent with home remodeling.

Decedent's health records included a statement by appellant that decedent suffered from "severe dementia," but decedent's physician told Detective Henning that decedent had shown no impairment, or at least "nothing that would stop him from making decisions." Decedent was never formally evaluated and no drugs were prescribed for dementia. The physician was not concerned about decedent's reported ignorance of dates or the name of the President of the United States, as it showed no more than his lack of awareness of current events. The physician explained that the "deep white matter disease" referenced in the records was normal for decedent's age but did not correlate with dementia.

3

Detective Henning spoke to the Adult Protective Services investigator who had deemed appellant's 2008 complaint of elder abuse unfounded after interviewing decedent. The investigator stated that decedent had been alert and oriented during the interview, and had denied any financial abuse by appellant. Based on his investigation, Detective Henning concluded the allegations of elder abuse were unfounded and closed the case.

In August 2011, appellant filed a civil action for elder abuse, fraud, undue influence and declaratory relief, which was ordered related to the probate case.[1] In November 2012, respondent moved for summary judgment or summary adjudication, on the grounds that there were no disputed material facts and the action was barred by the four-year statute of limitation for elder abuse. The motion was supported by declarations from respondent, his sister Crystal Finley, and attorney Nicholson; evidence submitted in relation to the 2008 restraining order against appellant; Detective Henning's report; and a letter decedent signed in May 2008, stating he had authorized and was aware of all withdrawals from the joint account.

In his separate statement of undisputed facts, respondent asserted he had a particularly close relationship with decedent throughout his life; that decedent was competent until he died; that he gave respondent access to his money as long as respondent took care of him; that respondent dissipated the funds from the sale of decedent's house before decedent's death and after that had to support decedent from his own funds; and that appellant's complaints of elder abuse over the years had not been substantiated.

In opposition, appellant submitted the declarations of several family members, but in her opposition to respondent's separate statement, she referenced those declarations solely as evidence that respondent was not the only heir who had an ongoing close relationship with decedent. Appellant argued Detective Henning's report was

---

[1] In her notices of related case in 2011, appellant represented the probate case both as pending and as dismissed without prejudice.

inconclusive as to decedent's mental capacity. Appellant did not object to the admissibility of the report, and her objections to respondent's declarations for the most part were overruled.

The court ruled that the elder abuse claim was barred by the four-year statute of limitation because, according to the undisputed statement by respondent's sister, appellant had made accusations of financial elder abuse against respondent as early as April or May 2007, but she did not file the civil complaint until August 2011. On the claims for undue influence and fraud, the court concluded respondent had met his burden by producing evidence that his grandfather had not been incompetent and that he had agreed to invest in respondent's business. The court found appellant did not raise a triable issue of fact because she did not cite evidence disputing Detective Henning's conclusions. The court denied declaratory relief for the same reasons and granted summary judgment.

In response to the court's tentative ruling, at the hearing appellant's counsel highlighted the declaration of appellant's sister Estella V. Taylor that decedent had suffered from dementia since 1998, when he had been denied driving privileges. Respondent's counsel objected to this statement as mere opinion, as well as to appellant's failure to cite it in the opposition to the motion. The court adopted its tentative ruling, stating it did not find the probate case to be relevant to its determination.

This appeal followed the entry of judgment for respondent.

**DISCUSSION**

We review the trial court's decision on a motion for summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained. [Citations.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66.) We view the evidence in the light most favorable to the non-moving party. (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100.) A defendant moving for summary judgment must make a prima facie showing that there are no triable issues of fact in order to meet his initial burden of production. (*Aguilar v.*

5

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861.) Once the defendant shifts the burden, the plaintiff must make a prima facie showing that a triable issue of material fact exists. (*Id*. at p. 850.) The plaintiff's "evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1105, citing *Aguilar*, at p. 850.)

I

Financial elder abuse involves taking property of an elder (1) for wrongful use (that is, with actual or constructive knowledge the taking would likely be harmful to the elder), (2) with the intent to defraud, or (3) through undue influence. (Welf. & Inst. Code, § 15610.30, subds. (a)(1) & (3); (b).) The statute of limitation for elder abuse is four years. (*Id*., § 15657.7.) Appellant's elder abuse claim is predicated on claims of wrongful use, constructive fraud, and undue influence. All claims are based on the same facts (the opening of the joint account and its depletion) and cite the same statutory provisions. Because the claims are indistinguishable, respondent argues that the entire complaint is subject to the four-year statute of limitation for elder abuse. We agree.

A plaintiff must bring a cause of action within the applicable limitations period after the cause of action accrues—that is, after it is "complete with all of its elements." (*Norgart v. Upjohn Company* (1999) 21 Cal.4th 383, 397.) Claims for financial abuse that an elder may have suffered during his or her lifetime survive death and may be pursued by the administrator of his or her estate. (Welf. & Inst. Code, § 15657.3, subd. (c); see *Estate of Lowrie* (2004) 118 Cal.App.4th 220, 226–227.) Both respondent and the trial court incorrectly assumed that the statute of limitation began to run in May 2007, when appellant accused respondent of coercing decedent into selling his house and misappropriating the funds. As the decedent's successor in interest, the administrator steps into the decedent's position as to a particular action. (See *Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 905.) Thus, in suing respondent on behalf of the decedent's estate, appellant steps into the decedent's shoes, and her suspicion of elder abuse has no

6

bearing on the statute of limitation as to claims she asserts solely on behalf of decedent's estate.[2]

The elder abuse claim is based on the opening of the joint account at the end of 2006, which allowed respondent unfettered access to the proceeds from the sale of decedent's house. Appellant argues the statute of limitation on that claim was tolled during decedent's lifetime due to his incapacity. (See Code Civ. Proc., § 352, subd. (a) ["If a person entitled to bring an action . . . is, at the time the cause of action accrued . . . lacking the legal capacity to make decisions, the time of the disability is not part of the time limited for the commencement of the action"].)[3]

Respondent offered evidence that decedent was not incompetent, which appellant failed to exclude or rebut. Specifically, appellant did not object to Detective Henning's report as hearsay. If received without objection, otherwise inadmissible hearsay evidence may be considered competent proof. (*In re C.B.* (2010) 190 Cal.App.4th 102, 132, citing *People v. Panah* (2005) 35 Cal.4th 395, 476.) Appellant's argument that the report is inconclusive regarding decedent's mental capacity is contrary to the quoted opinion of decedent's treating physician that decedent had shown no signs of dementia or any impairment that prevented him from making decisions.

Although appellant lists various declarations she filed in opposition to the summary judgment motion, she cites no specific evidence raising a genuine issue of fact regarding the decedent's mental condition. The lack of adequate record citation forfeits any claim of error on appeal. (See *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743.) Nor did appellant cite any such evidence in the separate statement. (See *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30–31 [disputed fact may not "be buried in the mound of paperwork filed with the court,

---

[2] Notably, appellant's own rights as a beneficiary under the will did not vest until decedent's death. (See *Sefton v. Sefton* (2012) 206 Cal.App.4th 875, 889.)

[3] Appellant also cites Welfare and Institutions Code section 15657.6, which provides for the return (upon demand) of property taken from an elder who is of unsound mind or lacks capacity.

because the statutory purposes are not furthered by unhighlighted facts"].)  At the summary judgment hearing, appellant's counsel referenced the declaration of appellant's sister that decedent suffered from dementia because he had been denied driving privileges for various ailments since 1998.  Respondent objected to appellant's belated reliance on her sister's opinion about decedent's mental condition.  The court did not expressly rule on the objection, but in any event, the declaration of appellant's sister does not create an issue of material fact.  The sister broadly stated decedent's ailments could be verified by reference to his medical records at various hospitals, but offered no medical record or any other factual basis for concluding decedent suffered from dementia.  An issue of fact may not be raised by "'broadly phrased[] and conclusory assertions.'"  (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)

Appellant also argues that the petition for probate under which her special letters of administration were issued was timely.  The original petition was filed in April 2010; the special letters to investigate the assets of the estate were issued in November of that year.  Appellant filed the elder abuse petition in the probate case in May 2011 and refiled it as a civil case in August 2011.  Only the timeliness of the civil case is at issue here.  Appellant cites no authority to support her argument that the relation of the probate and civil cases has any bearing on the statute of limitation issue.  The failure to cite supporting legal authority forfeits this argument.  (See *In re Estate of Cairns* (2010) 188 Cal.App.4th 937, 949.)

Respondent argues that the relation-back doctrine, which applies to the amendment of an earlier pleading, does not apply in this case because the elder abuse petition filed in the probate case was never amended.  Cases discussing the relation-back doctrine in the context of supplemental complaints, dealing with matters that occurred after the filing of the original complaint, are inapposite because, as respondent recognizes, this case does not involve a supplemental complaint.  (See *ITT Gilfillan, Inc. v. City of Los Angeles* (1982) 136 Cal.App.3d 581, 585 [denying relation back of

8

supplemental complaint], contra *Bendix Corp. v. City of Los Angeles* (1984) 150 Cal.App.3d 921.)[4]

The civil complaint at issue in this appeal was filed more than four years after the opening of the joint account, on which the elder abuse claims against respondent were based. Appellant has not shown that the statute of limitation was tolled at any time. Respondent is entitled to summary judgment on the ground that the elder abuse claims are barred by the statute of limitation.

## II

Alternatively, appellant has failed to show that a trial issue of material fact exists as to those claims.

Appellant argues that elder abuse is presumed in cases of family or caregiver theft or overreaching. (See Balisok, Elder Abuse Litigation (The Rutter Group 2015) Financial Abuse, ¶ 8.21, p. 8-9, ¶ 8.23, p. 8-10 ["range of possible schemes that might be addressed by remedies for financial abuse is too broad for comprehensive treatment. Each scheme, however, will be presumptively fraudulent or the product of actual fraud, undue influence and/or mistake," citing, e.g., former Prob. Code, § 21350].) However, the statutory presumption of fraud and undue influence on which appellant relies does not apply in cases, such as this, involving family members. (See *Bernard v. Foley* (2006) 39 Cal.4th 794, 812 [reviewing former Prob. Code, §§ 21350 & 21351, now §§ 21380, 21382].)

---

[4] Neither party has addressed the judicially created doctrine of equitable tolling, which applies when a plaintiff seeks remedies in alternate forums and which requires a showing of "'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citation.]" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 102.) We note that if that doctrine applies here, it is questionable whether the original petition for probate gave notice to respondent that appellant intended to sue him for elder abuse on behalf of the estate since that claim was not asserted until May 2011. Additionally, appellant did not comply with the 10-day period the probate court granted for amending the elder abuse petition filed in the probate case or for filing a civil complaint.

Nevertheless, a common law presumption of undue influence, shifting the burden of proof, may arise upon the showing of a confidential relationship, active procurement of the challenged instrument, and undue benefit. (*Bernard v. Foley*, *supra*, 39 Cal.4th 794, 800.) For purposes of elder abuse, undue influence is currently defined as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." (Welf. & Inst. Code, § 15610.70 (a).) It requires consideration of the victim's vulnerability, the influencer's authority and tactics, and the equity of the result. (*Ibid*.)

Relying on respondent's evidence, the trial court concluded decedent and respondent were like father and son, and decedent had agreed to fund respondent's construction business so long as respondent took care of him. Respondent kept his end of the bargain, and the investigator who interviewed decedent several months before decedent died found him "alert, oriented, and well cared for." During the interview, decedent denied any financial abuse by respondent. The withdrawals from the joint account were consistent with the claimed agreement. Respondent's evidence also showed that decedent had been personally present at the opening of the joint account, that he had claimed to be aware and to have authorized the withdrawals from the account, and that Bank of America would have reported any suspicious account activity to Adult Protective services. The court found respondent carried his burden to show he had not taken unfair advantage of decedent.

The court made similar findings on the claim of constructive fraud, which is a species of fraud applicable to confidential relationships, such as between family members, and consists of breaches of trust causing damages, even in the absence of actual fraud. (See *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415.) Respondent's evidence showed he had his grandfather's authorization to access the money in the joint account in order to pay for decedent's care and to invest in real estate in the hope of making profit. The dissipation of the funds was caused not by respondent's breach of trust, but by the collapse of the real estate market. It did not result in any injury to decedent, whom respondent continued to support from his own funds.

10

Respondent's evidence was sufficient to shift the burden to appellant, even were we to assume that a rebuttable presumption of undue influence would arise on these facts. Appellant has the burden to show error on the record presented, even though she did not bear the initial burden below. (*Bains v. Moore* (2009) 172 Cal.App.4th 445, 455.) Her showing is insufficient. She vaguely argues that Detective Henning's investigation was not thorough, and that further investigation should have been required. However, she cites no evidence contradicting Detective Henning's conclusions or respondent's evidence, nor does she show that the facts of the case give rise to a conclusive presumption against respondent.

Appellant's principal argument appears to be that depositing the proceeds from the sale of decedent's house in the joint account left decedent's estate "penniless," something that the court did not consider. The argument is based on the speculative assumption that respondent must have been aware of the joint tenancy right of survivorship, and that decedent must have been ignorant of it. There is no evidence that respondent knowingly undermined the bequest in decedent's will and trust, which he had helped decedent set up. The evidence shows only that respondent was given access to the funds in the joint account during decedent's lifetime, and the funds were depleted through authorized withdrawals before the estate came into existence upon decedent's death.

11

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.                    MANELLA, J.