Filed 3/6/23  Gerald C. Fox Foundation v. Fox CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| GERALD C. FOX FOUNDATION, et al.,<br><br> Plaintiffs and Respondents,<br><br>v.<br><br>RICHARD B. FOX,<br><br> Defendant and Appellant. | A165821<br><br>(Santa Clara County<br>Super. Ct. No. 18PR182796) |

Richard B. Fox appeals following judgment against him on a claim brought pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; Elder Abuse Act).[1]  We affirm.

---

[1] All undesignated section references are to the Welfare and Institutions Code.

1

Richard B. Fox, David K. Fox, and the late Gerald "Jerry" C. Fox were brothers, sons of Bill C. "B.C." Fox.[3] Charles Fox and Allison Greene are David's children. The Gerald C. Fox Foundation (Foundation) is a Minnesota nonprofit corporation that makes distributions to charities selected by Jerry.

Jerry had lifelong issues regarding his mental capacity. In 2011, Jerry executed the Gerald C. Fox Trust (Trust), transferring certain property to the Trust and naming Richard as sole trustee. As originally established, the Trust provided that income from the Trust property was to be distributed to Jerry during his lifetime, along with any principal necessary to provide for his needs. Upon his death, certain Trust property would be distributed to David's children and the balance to the Foundation.[4]

After executing the Trust, Jerry moved from Minnesota to California, where Richard and his family provided care for Jerry. Richard managed all aspects of Jerry's life and paid for Jerry's expenses from the Trust or from Jerry's personal property. Starting in early September 2017, Jerry was hospitalized nearly continuously, required a breathing apparatus and feeding tube, and suffered impaired cognitive function. In early October, Richard presented Jerry with an amendment to the Trust (Amendment), changing the specific bequests to David's children, adding a new bequest to David's wife, and providing for the distribution of half the remaining Trust property to himself and his son and the other half to the Foundation. Richard said or

---

[2] We recite only the background facts relevant to this appeal.

[3] For convenience, we will refer to all members of the Fox family by their first names or nicknames. No disrespect is intended.

[4] A 2013 amendment to the Trust did not change the distribution of Trust property upon Jerry's death.

implied that Jerry could not come home to Richard's house from the hospital unless he signed the Amendment, which he did. Jerry died six days later.

PROCEDURAL BACKGROUND

In February 2018, the operative amended probate petition was filed by the Foundation and David's children (collectively, Petitioners). The petition seeks to invalidate the Amendment, order Richard to provide an inventory and accounting, and remove Richard as trustee. The petition also alleges Richard committed financial elder abuse against Jerry.

In his verified response, Richard challenged the petition's allegations that the Amendment was invalid and that he should be removed as trustee. In September 2019, on the eve of trial, Richard stipulated the Amendment was invalid, agreed to step down as trustee, and agreed to provide an inventory and accounting.

Following a four-day bench trial, the trial court issued a statement of decision finding Richard committed elder abuse and awarding Petitioners attorney fees and costs under the Elder Abuse Act. The court voided the Amendment and rejected Richard's contention that the Trust was also invalid. Richard filed a motion for a new trial which the trial court denied in a detailed written order. This appeal followed.[5]

DISCUSSION

I.    *The Elder Abuse Act*

"The Legislature recognizes that elders are a class of persons who are particularly vulnerable to abuse and that 'this state has a responsibility to protect' them. (§ 15600, subd. (a); [citation].)" (*Mahan v. Charles W. Chan*

---

[5] This matter was transferred by California Supreme Court Order on August 9, 2022 from the Sixth Appellate District (No. H048212) to the First Appellate District.

3

*Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*).) "The Legislature enacted the [Elder Abuse] Act to protect elders by providing enhanced remedies to encourage private civil enforcement of laws against elder abuse and neglect. [Citation.] An elder is defined as 'any person residing in this state, 65 years of age or older.' (§ 15610.27.) The proscribed conduct includes financial abuse. The financial abuse provisions are, in part, premised on the Legislature's belief that in addition to being subject to the general rules of contract, financial agreements entered into by elders should be subject to special scrutiny." (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 478 (*Bounds*).)

II.    *Standing*

Richard contends Petitioners lack standing under the Elder Abuse Act because they did not file a statutorily required declaration at the commencement of proceedings. We reject the challenge.

Section 15657.3 provides, "after the death of the elder or dependent adult, the right to commence or maintain an action shall pass to the personal representative of the decedent. If there is no personal representative, the right to commence or maintain an action shall pass to any of the following, if the requirements of Section 377.32 of the Code of Civil Procedure are met: [¶] (A) An intestate heir whose interest is affected by the action. [¶] (B) The decedent's successor in interest .... [¶] (C) An interested person...." (§ 15657.3, subd. (d)(1).)[6] The statute thus "delineates who has standing to bring an elder abuse lawsuit *after the death* of an elder or dependent adult." (*Estate of Lowrie* (2004) 118 Cal.App.4th 220, 227.)

---

[6] We grant Richard's unopposed March 25, 2022 request for judicial notice of legislative committee reports regarding the subsequently enacted bill adding this provision. (Stats. 2007, ch. 48, § 1.)

4

Code of Civil Procedure section 377.32 (hereafter, CCP § 377.32), referenced in section 15657.3, is part of a statutory scheme governing the procedure for asserting or maintaining a cause of action belonging to a decedent. (See Code Civ. Proc., § 377.35.) CCP § 377.32 provides, "The person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under penalty of perjury under the laws of this state" making specified averments. (CCP § 377.32, subd. (a).)

Petitioners did not file a CCP § 377.32 affidavit at any time before or during trial. Richard did not raise the issue until his new trial motion, which argued Petitioners lacked standing to assert the Elder Abuse Act claim because of their failure to file a CCP § 377.32 affidavit. With their opposition to Richard's new trial motion, Petitioners filed a CCP § 377.32 affidavit.[7] In its order denying Richard's new trial motion, the trial court found Petitioners did not lack standing.

As an initial matter, Petitioners are interested persons within the meaning of section 15657.3. The statute provides "interested person" is "defined in Section 48 of the Probate Code," with exceptions not relevant here. (§ 15657.3, subd. (d)(1)(C).) Probate Code section 48, in turn, defines

---

[7] One of the statements to be included in the CCP § 377.32 affidavit is " 'No proceeding is now pending in California for administration of the decedent's estate.' " (CCP § 377.32, subd. (a)(3).) Petitioners' affidavit provided, "At the time of the commencement of this action and through trial, no proceeding was pending in California for administration of Jerry's estate. Following trial in this matter, the Foundation filed a Petition seeking to have an administrator appointed for Jerry's estate. ... [A]s of the date of this declaration, no personal representative or administrator has been appointed for the estate."

"interested person" to include "any ... person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Richard's cursory contention that Petitioners are not interested persons because they have no interest in Jerry's personal estate, but only in the Trust, fails to explain why this matters in light of the statutory inclusion of persons "having a property right in or claim against *a trust estate* or the estate of a decedent which may be affected by the proceeding." (Prob. Code, § 48, italics added.) Moreover, because the challenged Amendment changed the Trust's bequest to each of the Petitioners, each respondent's property right in or claim against the Trust estate may be affected by the proceeding. (Cf. *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 729–730 [beneficiaries of decedent's trust lacked standing to pursue Elder Abuse Act claim because their bequest would not change regardless of the outcome of the proceedings].)

Richard's primary argument focuses on Petitioners' failure to file a CCP § 377.32 affidavit at the commencement of the proceedings. Among other issues, the parties dispute whether the CCP § 337.32 affidavit requirement is necessary to confer standing or only affects a party's capacity to sue. " 'There is a difference between the *capacity* to sue, which is the right to come into court, and the *standing* to sue, which is the right to relief in court.' [Citation.] 'Incapacity is merely a legal disability, such as infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action. It is not a plea in abatement, as is lack of capacity to sue.' "[8] (*Color-Vue, Inc. v. Abrams*

---

[8] " 'At common law a number of special pleas in abatement ... were made preliminarily as separate pleadings prior to both the demurrer and pleas in bar. A plea in abatement did not challenge the plaintiff's claim on the merits but merely objected to the particular proceeding to enforce it. The

6

(1996) 44 Cal.App.4th 1599, 1604, fns. omitted (*Color-Vue*).) "A plaintiff lacks standing to sue if, for example, it is not a real party in interest." (*Id.* at p. 1604, fn.4.)

The distinction between standing and capacity is critical because "a plea in abatement such as lack of capacity to sue 'must be raised by defendant at the earliest opportunity or it is waived.... The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer. [Citation.] It is a technical objection and must be pleaded specifically. Thus an affirmative defense or demurrer which contains a general assertion that plaintiff has not stated a cause of action does not suffice to raise a plea in abatement. [Citations].' [Citations.] Lack of standing, by contrast, is not waived by failure to timely object." (*Color-Vue, supra,* 44 Cal.App.4th at p. 1604.)

Cases considering the application of CCP § 377.32 in contexts other than Elder Abuse Act claims have indicated the affidavit is not necessary to establish standing, holding the statute " 'does not require that the affidavit be filed as a condition precedent to commencing or continuing the action.' [Citation.] Instead, at most, 'failure to file the affidavit could possibly subject the action to a plea in abatement.' " (*Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 614; see *id.* at pp. 613–614 [rejecting argument, first raised more than two years after original complaint was filed, that the plaintiffs' failure to file CCP § 377.32 declaration with their original complaint meant the plaintiffs lacked standing until the declaration was filed with a subsequent amended complaint]; accord, *Parsons v. Tickner* (1995)

---

code system abolished the separate pleading but allowed the same kind of objections to be raised by demurrer or answer.' " (*The Rossdale Group, LLC v. Walton* (2017) 12 Cal.App.5th 936, 942.)

31 Cal.App.4th 1513, 1523–1524 [the plaintiff's failure to file CCP § 377.32 declaration did not bar her from pursuing action as successor in interest].)

We see no reason to construe the CCP § 377.32 declaration requirement differently for purposes of Elder Abuse Act claims; to the contrary, we see every reason to construe it the same. "The prerequisites for standing to assert statutorily based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466.) " 'The purpose of the [Elder Abuse Act] is essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect.' " (*Estate of Lowrie, supra,* 118 Cal.App.4th at p. 226.) The Legislature expressly provided that the portion of the Elder Abuse Act containing section 15657.3 was enacted "to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (§ 15600, subd. (j).) "This statement of legislative intent suggests the Legislature intended a broad definition of standing in the context of elder abuse cases." (*Estate of Lowrie,* at p. 227.) Thus, "[s]tanding, for purposes of the Elder Abuse Act, must be analyzed in a manner that induces interested persons to report elder abuse and to file lawsuits against elder abuse and neglect. In this way, the victimized will be protected." (*Id.* at p. 230; see also *ibid.* ["Any definition given to Welfare and Institutions Code section 15657.3, subdivision (d) must be sufficiently elastic to fulfill the purposes of the Elder Abuse Act."].)

Accordingly, we construe section 15657.3, consistent with the purposes of the Elder Abuse Act, such that the CCP § 377.32 declaration requirement is a question of capacity to sue, not standing to sue, and must be raised at the

8

earliest opportunity or be waived.  Because Richard waived the issue by failing to raise it earlier, the challenge fails.[9]

III.  *Deprivation of a Property Right*

Richard argues the Amendment did not constitute a taking or the deprivation of a property right under section 15610.30 because it was revocable and did not take effect during Jerry's lifetime.  We disagree.

Financial abuse of an elder occurs when a person "Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult" for wrongful use, with intent to defraud, or by undue influence.  (§ 15610.30, subd. (a).)  The statute further provides, "a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a

---

[9] We need not and do not decide whether, as the parties dispute, the CCP § 377.32 declaration requirement for purposes of section 15657.3 applies only to successors in interest or also applies to intestate heirs and interested persons.

Richard raises a separate, additional challenge with respect to the Foundation.  He disavows any challenge to the Foundation's standing, but instead challenges the standing of David and a former member of the Foundation's board of directors, Jay Johnson, to bring claims on behalf of the Foundation.  Assuming the challenge has been preserved, it fails.  The Foundation asserted the claims in the operative amended petition on its own behalf; neither David, Johnson, nor any other representative of the Foundation is a party and therefore their standing is not at issue.  Richard's reliance on a case involving individual and derivative claims brought by a corporation's director is therefore unavailing.  (*Turner v. Victoria* (2021) 67 Cal.App.5th 1099, 1114, review granted Nov. 10, 2021, S271054.)  We deny as irrelevant Petitioners' January 18, 2022 request for judicial notice of documents related to whether Richard is collaterally estopped from challenging the Foundation's standing, an issue we need not decide.

9

representative of an elder or dependent adult." (*Id.*, subd. (c).) "The text of section 15610.30 is broad." (*Mahan, supra,* 14 Cal.App.5th at p. 861.)

Richard argues the statute requires property be taken from the victim during the victim's lifetime, relying on *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256 and *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396. The issue in *Quiroz* was whether an untimely Elder Abuse Act cause of action brought by a survivor related back to a timely filed wrongful death cause of action. (*Quiroz,* at p. 1262.) Richard relies on the following statement in the court's overview of the two types of claims: "a survivor cause of action [including a survivor claim under the Elder Abuse Act] is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event." (*Id.* at p. 1264.) *Carter* involved an Elder Abuse Act neglect claim against medical facilities treating the decedent before his death. (*Carter,* at pp. 401–402.) The court held allegations about the facilities' conduct following the decedent's death to cover up their alleged neglect did not support an Elder Abuse Act claim because, although this conduct might have injured the plaintiffs (the decedent's children), "in this survivors' action for elder abuse, only the injury that [*the decedent*] suffered before death matters." (*Id.* at p. 409.)

We agree that a decedent must be *injured* before death for an Elder Abuse Act claim, however, it is the Elder Abuse Act that defines what constitutes an injury for such a claim. The plain language of the statute does not require property be transferred during the elder's lifetime. The statute expressly provides deprivation of property may be made "by means of ... donative transfer, or testamentary bequest." (§ 15610.30, subd. (c).) "[T]he

10

phrases 'donative transfer' and 'testamentary bequest' refer not only to consummated transfers, but also to prospective transfers. [¶] A donative transfer is a gratuitous transaction. It can be inter vivos or testamentary. ... A testamentary bequest (which is also a gratuitous transaction absent a contract to make a will) is merely an inchoate expectation on the part of the beneficiary because '[i]n California, a will is generally revocable by the testator at any time and for any reason prior to [the testator's] death.' [Citation.] [¶] Thus, in the context of [§ 15610.30], the phrases 'donative transfer' and 'testamentary bequest' refer both to transactions that have been performed (the gift has been delivered and the testamentary bequest has taken effect) and to transactions that have not yet been performed (a promise to make a gift and a testamentary bequest has been made but the testator has not died)." (*Bounds, supra,* 229 Cal.App.4th at pp. 481–482.)

Moreover, "Case law recognizes that property rights are a complex ' "bundle of rights." ' [Citation.] That bundle includes the ' "rights to possess the property, to use the property, to exclude others from the property, and *to dispose of the property by sale or by gift*.' " (*Bounds, supra,* 229 Cal.App.4th at p.479, first italics omitted.) This understanding is reflected in the legislative history of the amendments adding the definition in subdivision (c) set forth above. A committee analysis provided an example of conduct covered by the law: when an elder is "pressured by a family member to change the terms of a will," then "the elder is unknowingly deprived of [the elder's] property." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1140 (2007–2008 Reg. Sess.) as amended Mar. 10, 2008, p. 4.) Richard's assertion that only *irrevocable* testamentary bequests constitute a deprivation of property is not supported by the statute's plain language. To so construe the statute " 'would violate the cardinal rule that courts may not add provisions

11

to a statute.' " (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1108.) Moreover, such a construction would allow abusers to effect deathbed changes to wills or trusts as long as the changes were technically revocable, a result entirely inconsistent with the purposes of the statute.

Accordingly, the Amendment constituted a deprivation of property under the Elder Abuse Act despite being revocable and having no effect during Jerry's lifetime.

IV.    *Richard's Undue Influence Challenge to the Trust*

The trial court rejected Richard's contention that the 2011 Trust was invalid because it was the result of undue influence exerted by B.C. On appeal, Richard asserts the court's rejection was based solely on the ground of estoppel and argues he was not estopped from asserting the claim. In fact, the court also found the claim was not pled. In any event, "it is a settled appellate principle that if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning." (*Young v. California Fish and Game Commission* (2018) 24 Cal.App.5th 1178, 1192–1193.)

Richard's response to the petition alleged, "if undue influence in this case means that others prepared [Jerry's] trust and foundation documents in 2011 to serve their own interests, ... then the 2011 trust and foundation executions are no more valid than the execution of the ... Amendment in 2017." "Under the usual rules of pleading, [a defendant] may raise affirmative defenses in its answer ... , but may not seek affirmative relief (Code Civ. Proc., § 431.30, subd. (c))." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 745–746; see Code Civ. Proc., § 431.30, subd. (c) ["Affirmative relief may not be claimed in the answer."].) " 'Affirmative relief'

12

is an award, such as damages, that goes beyond merely defeating the plaintiff's recovery." (*City of Stockton,* at p. 746, fn. 12.) Richard argues he did not seek affirmative relief on his undue influence claim. To the contrary, the prayer for relief in his response sought the following, "If the court finds the [Amendment] is invalid, the court should also order that the provisions of the Gerald C. Fox Trust of August 23, 2011 and the provisions dated August 23, 2011 which amend the Gerald C. Fox Foundation are invalid ...."[10]

Accordingly, Richard's claim that the Trust was invalid because of undue influence was improperly pled. We need not decide whether Richard was also estopped from asserting the claim.

## DISPOSITION

The judgment is affirmed. Petitioners are awarded their costs on appeal.

---

[10] Richard's response to the petition alleged, immediately following the paragraph alleging undue influence, "If both the 2011 and 2017 executions are deemed invalid, then the estate of [Jerry], an unmarried man with no will and no issue or living parents, should pass by intestate succession under Probate Code § 6402(c) to his only living siblings, half to Richard and half to David." At the beginning of the bench trial, Richard's counsel confirmed that one of his arguments would be the Trust was invalid and therefore Jerry's estate should be distributed equally between Richard and David.

13

_____

SIMONS, Acting P.J.

We concur.

_____

BURNS, J.

_____

WISEMAN, J.[*]

(A165821)

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14