Filed 11/27/24  Pantazatos v. Walpert CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEXANDROS PANTAZATOS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> NICHOLAS WALPERT et al., <br><br> Defendants and Respondents. | D082046 <br><br><br> (Super. Ct. No. 37-2019-00062714-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge.  Reversed and remanded with directions.

Huston McCaffrey, Shawn Huston and Kelley Combs for Plaintiff and Appellant.

Kirby & Kirby and Jason Kirby for Defendants and Respondents.

Plaintiff and appellant Alexandros Pantazatos appeals from a summary judgment entered in favor of defendants and respondents Demetrios Pantazatos and Evangelica Coco on Alexandros's[1] second amended complaint

---

[1]     We refer to parties who share the same surname by their first names to avoid confusion.

alleging causes of action for quiet title and slander of title. He also challenges an earlier order sustaining without leave to amend defendants' demurrers to a financial elder abuse cause of action, a ruling on which Alexandros unsuccessfully sought reconsideration. Alexandros contends his operative second amended complaint sufficiently states a claim for financial elder abuse by alleging defendants conspired to use undue influence to convince Alexandros's elderly father, Heracles Pantazatos, to "change his estate plan to favor [Nicholas] Walpert, and dis-inherit [Alexandros]." He further contends as to his causes of action for quiet title and slander of title there are sufficient material issues of fact pointing to defendants' conspiracy or "scheme to lay claim to [Heracles's] property . . . to overcome a motion for summary judgment." We hold as to Demetrios and Coco, Alexandros's operative complaint sufficiently states a financial elder abuse cause of action, including allegations showing Alexandros has standing to bring such a claim. However, we hold Alexandros forfeited his appellate arguments challenging the summary judgment on his quiet title and slander of title claims, and otherwise failed to demonstrate factual issues for trial on them. We reverse and remand with directions set forth below.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

Alexandros is the son of Heracles, who with his wife in 1976 purchased a single family home on Florida Street in San Diego (the property). Alexandros grew up in the property with his parents until 1986, when they divorced and Alexandros's mother transferred her interest in the property to Heracles.

In late 1989 or 1990, Heracles asked Alexandros's mother to move back into the property so as to reconcile. When she and Alexandros moved back into the property, Alexandros's uncle Demetrios, Heracles's younger brother, was living there rent free. Alexandros and his mother have lived in the property since then.

In 1998, Heracles created a living trust (the 1998 trust) leaving the property to Alexandros, with Alexandros designated the successor trustee, and Demetrios the next successor trustee.

In July 2017, Alexandros and Heracles met with a real estate broker, Paul Marcos Twilegar, to discuss how to change the title to the property so that it would be owned solely by Alexandros in case anything happened to Heracles. Twilegar saw based on Heracles's trust that Alexandros was the

---

[2] We state the undisputed material facts in the light most favorable to Alexandros, the summary judgment opponent, without considering evidence to which objections were made and sustained. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) As for Alexandros's financial elder abuse cause of action, we accept as true the well-pleaded factual allegations from his operative second amended complaint but not contentions, deductions or conclusions of law. (*Turner v. Victoria* (2023) 15 Cal.5th 99, 109.) We may consider the complaint's attached exhibits. (*640 Tenth, LP v. Newsom* (2022) 78 Cal.App.5th 840, 849, fn. 2; *Hamilton v. Green* (2023) 98 Cal.App.5th 417, 420; *Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 714, fn. 6.) We take facts from matters that are properly judicially noticed. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638; *640 Tenth, LP*, at p. 849, fn. 2; *Hamilton*, at p. 420.)

first successor and beneficiary, and told them it would be better to take no action since the trust would accomplish that goal. He advised them to consult an attorney and tax specialist.

In about the spring of 2018, when Heracles was experiencing failing health, Walpert, who is Alexandros's first cousin (the son of Heracles's older sister), began showing up at the property and spending time with Heracles. Coco is Walpert's sister.

Heracles died in October 2019. At the time of his death, Walpert informed Alexandros that Heracles had created another trust and health care power of attorney. Alexandros then learned that in September 2018, Walpert, using a legal form Internet site, created a new living trust for Heracles making Walpert the successor trustee and 100 percent beneficiary of the trust property, then to Alexandros if Walpert were not living. Alexandros, who was familiar with his father's signature, believed the defendants had forged Heracles's signature on it. Walpert also falsely swore on the health care power of attorney that he was not an agent of that power of attorney and not entitled to inherit Heracles's estate, and the defendants signed the documents so as to conceal their actions. Alexandros learned from Twilegar that Walpert had transferred the property out of the 1998 trust to the 2018 trust. Twilegar, who performed a background check, saw Walpert had a criminal background and had appeared to have filed for bankruptcy. Twilegar believed Walpert used undue influence or fraud to coerce or trick Heracles into transferring the property to Walpert.

Coco, Demetrios and Walpert began falsely stating that Alexandros and his mother had disrespected and neglected Heracles so as to take the property from Alexandros. Demetrios and Coco stood to gain financially because they knew Walpert would give them proceeds from the property's

4

sale.  But Alexandros paid his father's expenses (including for food, dental bills, the property's mortgage, property taxes, and later, ambulance transportation) and kept him financially and emotionally comfortable. According to Alexandros, Heracles never told him he was leaving his house to Walpert, but instead told Alexandros, "[T]his is your house."

*Alexandros's Lawsuit and Demurrers*

In December 2019, Alexandros applied ex parte and, over Walpert's opposition, obtained a preliminary injunction preventing Walpert from disposing of the property or evicting Alexandros or his mother from it.

Alexandros then sued Walpert, Demetrios and Coco, eventually attempting to allege in a verified first amended complaint causes of action for quiet title, financial elder abuse and conversion.  Alexandros also sought a judicial declaration about the parties' rights to the property.  Walpert demurred and moved to strike portions of the pleading.  The trial court sustained the demurrer as to the quiet title cause of action, but overruled it as to the others, granting Alexandros leave to amend to add a slander of title cause of action.  It struck certain conspiracy and punitive damages allegations.

Alexandros thereafter filed the operative verified second amended complaint alleging causes of action for quiet title, financial elder abuse, and slander of title.  In support of his financial elder abuse claim, he alleged in part that the defendants with the intent to steal or defraud either unlawfully appropriated, obtained, and retained Heracles's real and personal property, or assisted others in doing so.  Alexandros alleged the defendants used undue influence to cause Heracles to create a new trust, depriving Alexandros of his rightful inheritance.  He alleged the defendants knew of and exploited Heracles's infirmities to make changes against his own or his family's

5

interests, and by fraud and undue influence deprived him of the right to dispose of the property as he wished. Alexandros alleged that even after the 2018 trust was signed, Heracles still wanted to leave the property to him.

Walpert again demurred on grounds the financial elder abuse claim failed to state facts sufficient to constitute a cause of action. He argued the facts alleged did not show Heracles suffered any financial injury or was deprived of a property right within the meaning of the Elder Abuse and Dependent Adult Civil Protection Act, Welfare and Institutions Code section 15600 et seq (the Elder Abuse Act). Walpert argued Alexandros's amended pleading "fails to allege that [Heracles] suffered any financial harm as a result of the execution of the 2018 trust and therefore, [Heracles] was not deprived of any 'property right' . . . . Indeed, the mere change in beneficiary as a result of the execution of the 2018 trust, did not deprive [Heracles] of any of the rights of ownership of the property." (Underlining omitted.) Walpert argued that "[a]s a matter of law, after execution of the 2018 Trust, [Heracles] retained all of his rights to sell, transfer, or encumber the property at its fair market value, that he had prior to execution of the 2018 trust" and that "the only financial injury alleged in the [second amended complaint] is the alleged injury to [Alexandros] in being denied his inheritance."

In opposition, Alexandros argued the property right deprived from Heracles was the right to leave the property to whomever he wished. He argued actual financial harm was not a requirement to prove financial abuse of an elder or dependent adult, and that case law recognized property rights "are a complex 'bundle of rights,' " including under *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468 the right to dispose of property by sale or gift.

6

Alexandros pointed to Welfare and Institutions Code section 15610.30 in support of his position.[3]

The trial court sustained Walpert's demurrer without leave to amend, distinguishing *Bounds v. Superior Court*, *supra*, 229 Cal.App.4th 468 and ruling the second amended complaint "fails to allege facts sufficient to establish an adverse financial impact to Heracles . . . as a result of Walpert's alleged conduct, including the transfer of title of the Property from the 1998 Trust to the 2018 Trust." The court ruled that "even if [Alexandros] could plead that Walpert's alleged conduct caused harm to Heracles . . . , [Alexandros] fails to provide any authority allowing [him] to recover for the alleged elder abuse of Heracles . . . . To the extent [Alexandros] relies on allegations that [he] 'has standing to pursue an undue influence cause of action against the Defendants as successor in interest to decedent's estate, because [he] is the son of Heracles . . . and the . . . sole beneficiary of the deceased['s] valid trust and estate documents' . . . [Alexandros] fails to provide any authority allowing [him] standing to bring an elder abuse cause of action on behalf of Heracles . . . ." In the trial court's view, Alexandros did not proffer facts to cure the deficiency and thus did not establish a reasonable probability the complaint could be amended to plead a viable financial elder abuse cause of action. Accordingly, the court sustained Walpert's demurrer without leave to amend.

---

[3] Subdivision (c) of Welfare and Institutions Code section 15610.30 provides: "For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult."

7

Months after the court's ruling on Walpert's demurrer, Alexandros served Demetrios and Coco with the second amended complaint. Demetrios and Coco generally and specially demurred. Because the pleading still contained a financial elder abuse cause of action, they again challenged the sufficiency of that claim so as "to be prudent." Asking the court to judicially notice the earlier ruling on Walpert's demurrer, Demetrios and Coco argued Alexandros's second amended complaint "fails to allege facts sufficient to support a finding of 'financial abuse' as defined in Welfare & Institutions Code [section] 15610.30" and that Alexandros had not provided authority giving him standing to bring an elder abuse cause of action on Heracles's behalf. They argued Alexandros did not proffer facts to cure the pleading deficiencies. Thus, they argued, Alexandros did not demonstrate a reasonable probability the second amended complaint could be amended to plead an elder abuse claim against them.

Alexandros responded by comparing the circumstances to those in *Estate of Lowrie* (2004) 118 Cal.App.4th 220 (*Lowrie*), in which he asserted a granddaughter, a beneficiary of her grandmother's trust, had standing to bring an elder abuse cause of action against her uncle. Alexandros repeated his prior arguments about defendants depriving Heracles of a property right to freely dispose of his property.

The trial court sustained Demetrios and Coco's demurrer without leave to amend as to the financial elder abuse cause of action, adopting the reasoning of the court in the prior ruling on Walpert's demurrer. It reasoned that because Heracles "retained the right to transfer property into and out of the 2018 trust, the transfer of the property from the 1998 trust to the 2018 trust did not deprive [him] of a property right and did not constitute an adverse financial impact . . . While the transfer may have had an adverse

8

financial impact on . . . Alexandros . . . , the critical issue in the elder abuse cause of action is whether there is a financial impact on Heracles . . . . The court finds the [second amended complaint] fails to allege facts sufficient to establish an adverse financial impact to Heracles . . . as a result of defendants' alleged conduct, including the transfer of title of the property from the 1998 Trust to the 2018 Trust." (Some capitalization omitted.) The court concluded Alexandros did not proffer facts to cure the deficiency and thus did not demonstrate a reasonable probability the pleading could be amended to plead a viable cause of action.

*Demetrios and Coco's Summary Judgment Motion*

Demetrios and Coco moved for summary judgment as to the quiet title and slander of title causes of action. They argued the quiet title cause of action lacked merit because there was no evidence they had ever made an adverse claim to title to any of the personal or real property at issue, nor was there evidence Alexandros ever had a vested legal interest in the property. They argued summary judgment was proper as to Alexandros's slander of title claim because there was no evidence they made or published any false, disparaging or reckless statements regarding Alexandros or the property; concealed any facts regarding Alexandros or the property; intended to harm Alexandros's pecuniary interests; said anything to the notary, county officials, mortuary employees, and/or medical personnel regarding Alexandros or the property; said anything that caused Alexandros pecuniary loss; or acted with malice.

Demetrios and Coco submitted substantially identical supporting declarations for their arguments. In part, they stated they had no involvement in suggesting to Heracles or any person that Walpert should be the property's beneficiary, creating or suggesting the content of any legal

9

documents relating to the Property, signing or recording any such documents (apart from Demetrios serving as a witness), or creating the 2018 trust. They asserted they had never made any claim to the Property (claim meaning a "legal or equitable right, title, estate, lien, interest . . . [or] cloud upon title") and were not presently making a claim to it, nor to their knowledge had any person ever suggested they had made any claim or would somehow benefit if the property went to Walpert. They averred they had "never taken any action nor said anything that could possibly be interpreted as a 'claim' . . . against the Property." They stated they had never negligently or intentionally misrepresented any facts, concealed any facts, or made an unprivileged or malicious publication of a false statement concerning the property or Alexandros. Demetrios admitted he "did not tell [Alexandros], the notary, county officials, mortuary employees, and/or medical personnel that Heracles had created a new trust and estate documents to transfer the Property to [Walpert]" but that he "just signed the document the notary told me to sign."

Alexandros opposed the motion, submitting a lengthy supporting declaration and lodging 47 exhibits. For his background facts, Alexandros incorporated 98 paragraphs from his declaration. Apart from basic summary judgment standards, he simply argued the court should deny the motion "because there is a triable issue of fact regarding the conspiracy between the defendants to lay a fraudulent claim on the property." Alexandros also submitted declarations from Twilegar as well as attorney and former District Attorney Paul Greenwood, who pointed to inconsistencies in the evidence and Demetrios and Coco's deposition statements and averred in part that he found "indicators of collusion and concealment between the three defendants which give rise to triable issues" concerning the circumstances of the 2018

10

trust deed's creation. He gave his "opinion that there are triable issues of fact as to whether . . . Demetrios . . . and . . . Coco aided and abetted . . . Walpert in furthering his plan to commit elder financial abuse against Heracles . . . and as to whether they assisted in concealing such conduct."

In reply, Demetrios and Coco submitted objections to some of Alexandros's evidence. They argued Alexandros ignored summary judgment procedure and failed to meet his burden of producing evidence. They asserted their deposition testimony was entirely consistent with their summary judgment declarations, and Alexandros in his opposition sought to "use excerpts, out of context, to obfuscate the truth and avoid summary judgment." They argued there was no evidence to support Alexandros's slander of title claim, or evidence of a conspiracy.

Sustaining in part Demetrios and Coco's objections, the trial court granted summary judgment in their favor. As to Alexandros's quiet title claim, the court agreed there was no evidence that Demetrios and Coco had ever made an adverse claim to title to the property, and Alexandros's evidence and argument did not raise triable issues of fact as to that issue, or whether they engaged in a conspiracy with respect to the property. It further ruled based on Demetrios and Coco's evidence and Alexandros's opposing separate statement that no evidence established triable issues of material fact as to whether Demetrios and/or Coco published any actionable untrue and disparaging statements with respect to Alexandros's property. It ruled Alexandros did not submit any evidence raising triable issues of material fact as to whether Demetrios's and/or Coco's alleged statements " 'would lead a reasonable person to foresee that a prospective purchaser or lessee thereof might abandon his intentions' " or that they caused "a 'loss of a prospective purchaser' "; " 'thr[ew] doubt upon [the property's] ownership' "; hampered or

11

prevented "any 'particular pending deal' " or caused "a 'depreciation in the market value of the property'. . . .' "

*Alexandros's Reconsideration Motion*

Shortly after filing his summary judgment opposition papers, Alexandros moved for reconsideration of the court's demurrer rulings based on subsequent published authority. He argued the new cases "clarified the issue of whether it is considered financial elder abuse when a defendant uses undue influence to cause an elderly person to change their will or trust in favor of the defendant, and at the same time disinherit the plaintiff." Alexandros maintained that in each new case—*White v. Wear* (2022) 76 Cal.App.5th 24, *Matter of Kosmo Family Trust* (N.Y.App.Div. 2022) 207 A.D.3d 934, *Ring v. Harmon* (2021) 72 Cal.App.5th 844 and *Royals v. Lu* (2022) 81 Cal.App.5th 328, 353—disinherited beneficiaries had standing to sue for financial elder abuse, giving him standing to maintain such a cause of action. He argued that even if his motion did not comply with Code of Civil Procedure section 1008, the court had inherent authority to correct its errors. Alexandros argued the cases showed he had pleaded a proper claim for financial elder abuse by allegations that "defendants, using undue influence to make [Heracles] change his 20-years plus estate plan, procured or assisted in procuring the purported 2018 invalid trust, and disinherited Alexandros."

The court denied reconsideration, ruling the motion was untimely to the extent it sought relief under Code of Civil Procedure section 1008. It ruled the result would not change even if it considered the motion sua sponte; the prior rulings were based either primarily or exclusively on Alexandros's inability to allege an adverse financial impact on Heracles, and the new cases involved a plaintiff's standing. The court found Alexandros did not explain how the new cases on standing affected the prior rulings.

12

Alexandros filed this appeal from the ensuing judgment.[4]

DISCUSSION

I. *Demurrer to Financial Elder Abuse Cause of Action*

A. *Standard of Review*

In assessing an order sustaining a demurrer without leave to amend, the reviewing court will " 'examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) The court must liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.) " 'If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory . . . ." ' " (*Zhang*, at p. 370; *Thomas v. Regents of University of*

---

4    Alexandros represents, without record citation, that the court has stayed the case as to Walpert while this appeal is pending. He asks us to decide the issue of standing to avoid further appeals with respect to Walpert. As we explain below, we decide the standing issue only as it pertains to the respondents here, Demetrios and Cocos.

13

*California* (2023) 97 Cal.App.5th 587, 611-612 [a complaint " ' "survives a general demurrer insofar as its states, however inartfully, facts disclosing some right to relief" ' "].)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041.) Alexandros can make this showing for the first time on appeal. (Code Civ. Proc., § 472c, subd. (a).) " ' "[W]e review the trial court's result for error, and not its legal reasoning." ' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 93.)

B. *Elder Abuse Act*

The Elder Abuse Act "protect[s] elders, defined as 'any person residing in this state, 65 years of age or older' [citation], and dependent adults from abuse and neglect. [Citation.] The [Elder Abuse] Act protects against both '[p]hysical abuse' and '[f]inancial abuse.' " (*Ring v. Harmon, supra*, 72 Cal.App.5th at p. 852; see also Welf. & Inst. Code, § 15600 et seq.)

" ' "[F]inancial abuse" of an elder . . . occurs when a person or entity . . . [¶] (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . adult for a wrongful use or with intent to defraud, or both. [¶] (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder . . . adult for a wrongful use or with intent to defraud, or both. [¶] (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder . . . adult by undue influence,' as defined in section 15610.70." (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 856-857, quoting Welf. & Inst. Code, § 15610.30.)

14

Welfare and Institutions Code section 15610.30 provides that for its purposes, "a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder . . . *is deprived of any property right*, including *by means of an agreement, donative transfer, or testamentary bequest*, regardless of whether the property is held directly or by a representative of an elder . . . ." (*Id.*, subd. (c), italics added.)[5]

" 'The dependent clause that ends [Welfare and Institutions Code] section 15610.30, subdivision (c) [describing any property right] is . . . naturally read as expanding or emphasizing the breadth of the category.' " (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 508, quoting *Ring v. Harmon*, *supra*, 72 Cal.App.5th at p. 854.) " 'The concept of property in California is extremely broad.' [Citation.] 'It has long been recognized that the word "property" is a term with multiple meanings. [Citation.] 'Sometimes [the word] is employed to indicate the physical object to which various legal rights, privileges, etc., relate[— ] . . . the physical parcel of land in question. Other times it refers to the "complex aggregate of rights (or claims), privileges, powers, and immunities" that one has in that

---

5       " 'The terms "wrongful use" and "undue influence" are specifically defined [in the Act] as well. "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity. . . knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." ([Welf. & Inst. Code,] § 15610.30, subd. (b).) " 'Undue influence' means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." ([Welf. & Inst. Code,] § 15610.70.) The test for "undue influence" is governed by a series of listed factors, including the "vulnerability of the victim" ([Welf. & Inst. Code,] § 15610.70, subd. (a)(1)), the "influencer's apparent authority" (*id.*, subd. (a)(2)), the "actions or tactics used by the influencer" (*id.*, subd. (a)(3)), and the "equity of the result" (*id.*, subd. (a)(4)).' " (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 374-375.)

15

parcel of land.' " (*Cameron*, at pp. 508-509.) "In light of the breadth of the protections afforded to elders by the Elder Abuse Act and California's expansive construction of the term 'property,' it is clear that the Legislature intended 'property' in the financial elder abuse statute to encompass . . . 'any valuable right or interest protected by law.' " (*Id*. at p. 509 [interpreting property in the context of the financial elder abuse statute to encompass an individual's intangible statutory right to possess and re-rent her apartment].) "Where there is room for debate regarding the meaning of the statutory text of the [Elder Abuse] Act, it should be ' "liberally construed on behalf of the class of persons it is designed to protect," ' and in a manner compatible with its 'overall remedial purpose.' " (*Ring v. Harmon, supra*, 72 Cal.App.5th at p. 853.)

C. *Standing*

The Elder Abuse Act specifies who has standing to bring such claims. If the decedent has no personal representative or if the personal representative refuses to commence or maintain an action, any intestate heir whose interest is affected by the action, any successor in interest of the decedent or an "interested person" within the meaning of Probate Code section 48 (with exceptions not applicable here), has standing to sue for elder

16

abuse. (Welf. & Inst. Code, § 15657.3, subd. (d)(1)(A), (B), (C).)[6] Probate Code section 48 provides in part: "(a) Subject to subdivision (b), 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. [¶] . . . [¶] . . . (b) The meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

The Legislature amended the law in this manner to include, inter alia, "interested persons" so as to codify *Lowrie*, *supra*, 118 Cal.App.4th 220. (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 732 [Legislature amended Welf. & Inst. Code, § 15657.3, subd. (d) "with the apparent intent of codifying *Lowrie*"].) In *Lowrie*, on which Alexandros relies, the decedent created a trust of which she was the trustee, and made her son and granddaughter respectively the executor and trustee, and successor executor and trustee. (*Id.* at p. 223.) She bequeathed her granddaughter (and others) $10,000, and bequeathed her son the remainder of the estate. (*Ibid.*) The trust provided that if her son did not survive the decedent, then the granddaughter would

---

[6] Welfare and Institutions Code section 15657.3, subdivision (d)(2) provides: "If the personal representative refuses to commence or maintain an action or if the personal representative's family or an affiliate, as those terms are defined in subdivision (c) of Section 1064 of the Probate Code, is alleged to have committed abuse of the elder . . . , the persons described in subparagraphs (A), (B), and (C) of paragraph (1) shall have standing to commence or maintain an action for elder abuse. This paragraph does not require the court to resolve the merits of an elder abuse action for purposes of finding that a plaintiff who meets the qualifications of subparagraphs (A), (B), and (C) of paragraph (1) has standing to commence or maintain such an action."

17

receive the remainder. (*Id.* at pp. 223-224.) In the ensuing years, and unbeknownst to others, the decedent transferred certain real property and all of her personal property to her son. (*Id.* at p. 224.)

After the decedent's death, the granddaughter filed an elder abuse petition against the son. (*Lowrie, supra,* 118 Cal.App.4th at p. 224.) After the son unsuccessfully challenged her standing, a court found him liable for elder abuse and found him disinherited from the decedent's estate under Probate Code section 259. (*Id.* at p. 225.)[7] On the son's appeal, the Court of Appeal upheld the granddaughter's standing to bring her elder abuse claim, holding that the son's arguments otherwise ignored Probate Code section 259, which deemed elder abusers to have predeceased an abused elder adult. (*Id.* at p. 228.) The appellate court emphasized that "[s]tanding, for purposes of the Elder Abuse Act, must be analyzed in a manner that induces interested persons to report elder abuse and to file lawsuits against elder abuse and neglect. In this way, the victimized will be protected." (*Id.* at p. 230.) The court explained: "[I]f ][the son] predeceased decedent, [the granddaughter] would become the successor trustee and the successor beneficiary to the remainder. Thus, [the granddaughter] would become the person entitled to succeed to decedent's estate and [she] would have standing to bring this case." (*Id.* at p. 229.) According to it, "[the granddaughter's] expectancy, i.e. her contingent interest, provides her with a strong incentive to pursue this action and gives her standing." (*Id.* at p. 230.) It found the son's arguments

_____

7        Probate Code section 259 provides in part: "Any person shall be deemed to have predeceased a decedent to the extent provided in subdivision (c) where all of the following apply: [¶] . . . It has been proven by clear and convincing evidence that the person is liable for physical abuse, neglect, or financial abuse of the decedent, who was an elder or dependent adult." (Prob. Code, § 259, subd. (a)(1).)

based on an unduly restrictive interpretation: "Courts must interpret the standing provision in Welfare and Institutions Code section 15657.3, subdivision (d) to deter, not encourage [financial elder] abuse." (*Id*. at p. 231; see also *Lickter v. Lickter*, *supra*, 189 Cal.App.4th at pp. 730-732 [discussing *Lowrie*].)

D. *Alexandros Alleges Defendants Deprived Heracles of a Property Right So As to Maintain a Cause of Action Under the Elder Abuse Act*

Alexandros contends his operative complaint sufficiently states a cause of action for financial elder abuse. He compares the circumstances and his allegations to those in *White v. Wear*, *supra*, 76 Cal.App.5th 24, and some of the other cases he cited in seeking reconsideration.

In *White v. Wear*, the Court of Appeal held a petition for an elder abuse restraining order filed by a disinherited biological daughter stated a cause of action for elder financial abuse. (*White v. Wear*, *supra*, 76 Cal.App.5th at pp. 40-42.) The decedent in 2013 had entered into an amendment to a living trust making it irrevocable and unmodifiable unless he and his biological daughters, who were then acting as his successor trustees, consented in writing. (*Id*. at p. 29.) The petition alleged that in 2020, the decedent, while under a conservatorship and without notice, executed a trust amendment that " 'purport[ed] to supplant [the decedent's] intent expressed in his estate plan at all times while he had capacity—for his [biological] daughters and grandchildren to inherit his wealth (save for certain property to [his new wife])—and instead disinherit them.' " (*Id*. at p. 41.) Evidence that the decedent changed an over-30-year estate plan to disinherit his biological family in favor of his new wife and step-daughters "establishe[d] the undue influence required to state such a claim" even though the defendant

19

step-daughter "did not take, or possess, any of [the decedent's] personal property . . . ." (*Ibid*.) The defendant's "procurement, or assistance in the procurement, of the purported 2020 amendment supports a claim for elder financial abuse" because the claim "includes the taking of 'any property right, including by means of . . . testamentary bequest, regardless of whether the property is held directly or by a representative of an elder.' " (*Ibid*.) In reaching its holding, the Court of Appeal rejected the defendant's argument that she "induced no restriction on [the decedent's] ability to alienate or encumber his assets, or to alter his trust and the ultimate disposition of trust assets," pointing out the decedent was under a conservatorship; the amendment significantly changed his estate plan; and no court, conservator or cotrustee of his living trust had approved the amendment. (*Id*. at p. 41, fn. 19.)

Here, Alexandros alleges[8] that the defendants deceived or manipulated Heracles to create a new trust so as to change his main beneficiary from his own son to Heracles's nephew, Walpert. Alexandros alleges the defendants deprived Heracles of the right to leave the property as he had outlined in his 1998 trust, using fraud, undue influence, trickery and deception. He alleges that even after signing the 2018 trust, Heracles still wanted to leave his house to Alexandros. Alexandros further alleges the defendants transferred the property out of the 1998 trust and into the 2018 trust, then, after Heracles's death, transferred it again out of the 2018 trust into Walpert's own

---

8    That most of Alexandros's allegations are pleaded "on information and belief" does not render them defective. They are proper if Alexandros does not have actual or presumed knowledge of the facts, and the allegations are otherwise material and factual, not impermissible contentions, deductions, or conclusions. (See *Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 725, fn. 1; *People v. Superior Court* (*J.C. Penney Corp., Inc.*) (2019) 34 Cal.App.5th 376, 415, fn. 25.)

revocable trust.  We assume the truth of these allegations.  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; *Ring v. Harmon, supra,* 72 Cal.App.5th at p. 850.)

As in *White v. Wear*, in which the disinherited child's financial elder abuse petition stated a cause of action by alleging the decedent's purported trust amendment was contrary to the decedent's intent and without approval by conservators, court or cotrustees of the decedent's living trust, we hold Alexandros's operative complaint sufficiently states a claim by allegations that while Heracles still wanted Alexandros to have the property, defendants deceived Heracles so as to overcome his will, convincing him to enter into a new trust contrary to his wishes to leave his property to Alexandros and benefiting Walpert by making him Heracles's primary beneficiary.  The allegations, which we must accept as true, support a conclusion that defendant's actions resulted in a trust "purport[ing] to supplant [Heracles's] intent" (*White v. Wear, supra,* 76 Cal.App.5th at p. 41), inconsistent with his wishes as expressed in his 1998 trust, taking away Heracles's right to dispose of his property as he desired in his estate planning documents.

Defendants seek to distinguish *White v. Wear*, suggesting the court's decision turned on the daughter's status as cotrustee of the elder's living trust (which was irrevocable absent certain specified consent) and the fact that the elder was still alive and purported to amend his trust after having been adjudged incompetent in a contested trial years earlier.  They also point to the trial court's reasoning—similar to that of the defendant's argument rejected by the *White v. Wear* court (*White v. Wear*, *supra*, 76 Cal.App.5th at p. 41, fn. 19)—that Heracles retained the right to transfer his property into and out of either revocable trust, and thus his transfer of the property from

21

the 1998 trust to the 2018 trust did not deprive Heracles of any property right.

We do not read *White v. Wear* to turn on those facts, but on the circumstance that the petition alleged the defendant either unduly influenced or assisted in unduly influencing the decedent to enter into a trust amendment contrary to his pre-conservatorship wishes. (*White v. Wear*, *supra*, 76 Cal.App.5th at p. 41.) Defendants' arguments ignore the allegations that Heracles acted under the defendants' influence or persuasion to enter into an estate plan that did not reflect his wishes. Given our obligation to " ' "liberally construe[ the Act] on behalf of the class of persons it is designed to protect" ' and in a manner compatible with its 'overall remedial purpose' " (*Ring v. Harmon*, *supra*, 72 Cal.App.5th at p. 853), we conclude Alexandros's allegations demonstrate defendants deprived Heracles of a property right and thus state a cause of action for financial elder abuse.

E. *Alexandros's Operative Complaint and Allegations Demonstrate He Has Standing*

"[W]hen a demurrer or pretrial motion to dismiss challenges a complaint on standing grounds, the court may not simply assume the allegations supporting standing lack merit and dismiss the complaint. Instead, the court must first determine standing by treating the properly pled allegations as true. If, having taken the allegations as true, the court finds no standing, it should sustain the demurrer or dismiss the petition. If it finds standing by contrast, the court should allow the litigation to continue." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 827.) "California law takes a broad approach to the issue of standing, routinely allowing personally interested litigants access to state courtrooms in a wide variety of legal contexts." (*Saurman v. Peter's Landing Property Owner, LLC* (2024) 103

22

Cal.App.5th 1148, 1163.) Like the standard we apply to the court's demurrer ruling, "[b]oth standing and the interpretation of statutes are questions of law to which we typically apply a de novo standard of review." (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.)

The standing question here is straightforward.[9] The operative complaint and its exhibits show Alexandros is a beneficiary in both Heracles's 1998 and 2018 trusts, albeit a secondary beneficiary in the 2018 trust, as was the granddaughter in *Lowrie, supra,* 118 Cal.App.4th 220. Under Probate Code section 48's broad definition of an "interested person," if Alexandros has a "property right in or claim against a trust estate or the estate of [Heracles] which may be affected by the [elder abuse] proceeding," he has standing to pursue his elder abuse claim. (Prob. Code, § 48.) Applying the principles discussed above—including the consequence under Probate Code section 259 of Walpert's potential elder abuse liability under *Lowrie,* a case that defendants do not mention in their respondents brief—he does so as a secondary beneficiary to Walpert, who will be deemed to have predeceased Heracles if a trier of fact finds him to be an elder abuser.

We observe that Alexandros asks us to address standing so as to avoid a further appeal as to Walpert. Our view on standing applies only to the complaint against Demetrios and Cocos; we leave it to the trial court and the

---

9    Alexandros contends as a dispossessed beneficiary in the 1998 trust, and a secondary beneficiary in the 2018 trust, he has standing. He alleges he has a beneficial interest in Heracles's trust assets and standing to pursue the cause of action as a successor in interest to the estate, as the sole beneficiary of Heracles's 1998 trust. We note that in making these arguments, he relies in part on *Royals v. Lu, supra,* 81 Cal.App.5th 328, but the cited portions of that case are unpublished. His argument has merit in any event based on *Lowrie, supra,* 118 Cal.App.4th 220.

23

parties to determine in the first instance whether our ruling applies equally to or affects Alexandros's standing to sue Walpert.

## II. *Summary Judgment*

### A. *Legal Principles and Standard of Review*

" 'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

If the defendant meets that summary judgment burden, the burden of production shifts to the plaintiff to demonstrate a prima facie showing of the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) " ' "The plaintiff . . . may not rely upon the mere allegations . . ." of his "pleadings to show that a triable issue of material fact exists but, instead," must "set forth the specific facts showing that a triable issue of material fact exists as to that cause of action." [Citation.]' [Citation.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party

24

opposing the motion in accordance with the applicable standard of proof.' " (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1163.)

"[O]ur review of the judgment on the summary judgment order is not limited to the issues decided by the trial court." (*Gray v. La Salle Bank N.A.* (2023) 95 Cal.App.5th 932, 967.) To the contrary, "we must ' "affirm the judgment of the trial court if it is correct on any theory of law applicable to the case" ' " (*ibid.*) so long as the parties have had an adequate opportunity to address the theory in the trial court. (*Id.* at p. 948.)

B. *Alexandros's Opposing Papers and Appellate Arguments*

As set out above, defendants in moving for summary judgment presented evidence via their declarations to support arguments (1) that there was no evidence to support a conspiracy or any vicarious liability on their part; (2) they had never made an adverse claim to the property; and (3) they did not make intentional or negligent misstatements about the property, conceal facts about the property, or take action to cast doubt on Alexandros's alleged ownership of the property.

In his opposing separate statement, Alexandros disputed every fact defendants asserted, repeating verbatim argumentative and conclusory assertions about the defendants' actions and motives, and citing portions of Coco's and Demetrios's deposition transcripts, as well as isolated paragraphs from Coco's and Walpert's declarations opposing his preliminary injunction request. In his opposing points and authorities, Alexandros argued based on basic summary judgment legal principles that the motion "should be overruled because there is a triable issue of fact regarding the conspiracy between the defendants to lay a fraudulent claim on the Property." Under the heading "Triable Issue of Fact," Alexandros merely stated: "Badges of Fraud and Undue Influence factors that apply to all defendants." He did not

25

reference, much less discuss, defendants' evidence presented in support of their summary judgment motion. Apart from authorities supporting basic summary judgment principles, Alexandros cited no case law to support his cursory points.

On appeal, Alexandros argues that in an action for quiet title and slander of title, he may allege the defendants "sought to oust [him] from the premises under a civil conspiracy theory." For this proposition, Alexandros refers without analysis or pinpoint citation to *Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059. Alexandros further argues based on *Brown v. Boren* (1999) 74 Cal.App.4th 1303, that where there is evidence of fraud and conspiracy, "a quiet title action may encompass defendants who have merely conspired or aided and abetted in taking of property, even though they themselves did not personally receive such property." He argues findings of undue influence and fraud will establish a judgment for these causes of action.

According to Alexandros, there is evidence of a conspiracy to use undue influence to "illegally claim and slander the title of the property."[10] (Some capitalization omitted.) Pointing to Welfare and Institutions Code section 15610.70's definition of "undue influence" and its checklist of factors, he summarizes *Walpert's* actions that he claims demonstrate undue influence, claiming only (without citing to the record) that Demetrios and Coco "were . .

---

[10]    Alexandros asserts, without record citation, that "Demetrios and [Coco] stood to gain financially for their participation and were also motivated by their loyalty to each other. Demetrios and [Coco] further advanced the conspiracy by telling all of their family members and others that Alexandros and his mother were neglecting and abusing the deceased in order to justify and legitimize the fraudulent taking. Demetrios was there and acted as witness to the documents that were signed by Heralces [*sic*] via perjury and undue influence."

26

. aware of [of Heracles's vulnerabilities] because Demetrios would also visit Heracles weekly and Heracles was precious to [Coco]." Alexandros asserts Walpert and Demetrios "went in secret to change the trust to disinherit Alexandros . . . ." He compares the circumstances to those in *Sparks v. Mendoza* (1948) 83 Cal.App.2d 511, stating without record citation that "Heracles had Greek as his first language, Walpert was Heracles's advisor on his complicated business matters, Heracles received no independent advice before the invalid trust was created, and Walpert received no consideration for the deed." He argues under *Sparks* it became defendants' burden " 'to show the transaction was free from fraud and undue influence, and in all particulars fair.' "

Alexandros further contends the evidence shows Demetrios and Coco conspired with or aided Walpert: "The lies by Coco and Demetrios to all of their family, consistent with the lies told to the [c]ourt in their declarations, provide sufficient evidence of their conspiracy to aid and abet Walpert" and "Demetrios actively participated in the scheme by going with Walpert and Heracles to have the [2018 trust] signed." Alexandros sets out 12 pieces of evidence (many of which are unsupported by record citation) that show a "presumption of abuse" that he says Walpert assertedly cannot overcome with proof.

C. *Alexandros Forfeited His Appellate Arguments as to Undue Influence and Conspiracy*

Alexandros presents no meaningful discussion of the elements of a quiet title or slander of title cause of action in either his opening brief or reply papers. He argues that for both claims, he may allege the defendants "sought to oust [him] from the premises under a civil conspiracy theory." He argues Demetrios and Coco "slander the title and make claims adverse to [his

27

property interests] when they claim the property belongs to Walpert and not Alexandros." He maintains without citation to authority that Demetrios and Coco do not have to claim a possessory interest, just an adverse claim. But Alexandros did not make any of these particular points, or cite any of the case law mentioned above, to the trial court in opposing summary judgment.

Under these circumstances, we conclude that Alexandros has forfeited his right to oppose the motion as to these claims and abandoned any appeal relating to them. (See *Arnall v. Superior Court* (2010) 190 Cal.App.4th 360, 373 [failure to oppose summary adjudication on a particular ground before the trial court forfeits the right to assert challenge on appeal].)

Alexandros's authorities do not convince us in any event, as they do not support his assertions. Appellate decisions are " 'not authority for everything said in the court's opinion but only "for the points actually involved and actually decided." ' " (*Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1285, quoting *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

*Sparks v. Mendoza*, *supra*, 83 Cal.App.2d 511 was not decided in the summary judgment context. The sole question on appeal of a judgment in favor of defendants following a bench trial on a quiet title claim was whether substantial evidence showed a quitclaim deed had never been delivered to the plaintiff, the grantor's daughter. (*Id*. at p. 514.) The Court of Appeal answered yes, relying on the principle that "[w]here the relationship between the parties *is that of parent and child* and the parent relies on the child for advice in business matters, a gift *inter vivos,* from the parent to the child which is without consideration and where the parent does not have independent advice, is presumed to be fraudulent and to have been made under undue influence." (*Id*. at p. 514, italics added.) *Sparks* is factually

28

inapposite, and does not address the summary judgment burdens involved in this appeal.

The issue in *Michael R. v. Jeffrey B.*, *supra*, 158 Cal.App.3d 1059 was "whether verbal encouragement to commit assault with a deadly weapon is affirmative conduct sufficient, as a matter of law, to impose civil liability for damages ensuing from that assault." (*Id*. at pp. 1063-1064.)[11] We see no relevance to whether Alexandros can overcome summary judgment on his quiet title and slander of title causes of action. Alexandros cites page 1314 of *Brown v. Boren*, *supra*, 74 Cal.App.4th 1303 as well as *Estate of Young* (2008) 160 Cal.App.4th 62, at page 93, without analysis. *Brown* upheld motions for judgment and new trial on the plaintiffs' claims, which included quiet title, on grounds there was no evidence of fraud or a scheme to defraud and there was no formal subordination agreement so as to eliminate priority of the defendants' trust deeds. (*Brown*, at pp. 1309-1310, 1313.) On appeal, the

---

[11]    In support of his claim that a civil conspiracy will support his causes of action, Alexandros also cites two federal cases—which we are not bound to follow (*People v. Avena* (1996) 13 Cal.4th 394, 431)—as well as *Douillard v. Smith* (1944) 70 Cal.App.2d 522. The plaintiff in *Douillard* sought to quiet title to certain property that was sold in satisfaction of an attorney fee judgment to the assignee of attorneys for the respondent, who was indebted to the plaintiff based on a different judgment related to a probate matter. (*Id*. at p. 524.) The plaintiff alleged that the attorneys and assignee "conspired together to so cloud and encumber the title to said property that [he] would not be able to collect his judgment . . . ." (*Id*. at p. 525.) The claim on appeal in *Douillard* was whether " 'the judgment was procured by the fraud and collusion of respondents in deceiving and misleading the court into rendering the judgment.' " (*Ibid*.) The Court of Appeal upheld the trial court's finding against the plaintiff that there was no fraud or conspiracy; that the plaintiff did not overcome the presumption of honesty and fair dealing. (*Id*. at pp 525-526.) *Douillard*'s fact-specific outcome does not convince us that Alexandros's evidence raises fact issues for trial on his quiet title cause of action. And *Douillard* does not address or mention slander of title.

plaintiff in *Brown* contended the court improperly denied her request for equitable relief, but the Court of Appeal rejected the arguments on grounds she did not plead the *contract-based* theory of recovery on which she based her appeal, and did not provide an adequate appellate record for review. (*Id.* at pp. 1314, 1321.) *Brown* does not support Alexandros's assertions.

Nor does *Estate of Young* support Alexandros's assertions. That case involved a Probate Code section 850 petition by an administrator of a decedent's estate against two individuals and a trust to return property to the estate based on claims of fraud and undue influence. (*Estate of Young*, *supra*, 60 Cal.App.4th at pp. 67-68.) Though the petition included "quiet title allegations" (*id.* at p. 73), the issue was whether "the decedent died having a claim to real or personal property, title to or possession of which is held by another. (§ 850, subd. (a)(2)(D).)" (*Young*, at pp. 67-68.) The decision makes no mention of slander of title, and the defendants' appellate claim was there was a "lack of substantial evidence to support the findings of fraud and undue influence," which was the analysis undertaken by the Court of Appeal. (*Id.* at pp. 68, 79.) Regardless of the above, Alexandros did not refer to any of these cases in his opposing summary judgment papers.

D. *Alexandros Did Not Demonstrate Triable Issues of Material Fact With Regard to Quiet Title or Slander of Title*

Were we to consider Alexandros's opposing summary judgment evidence, we would reach the same conclusion. Even liberally construing it as we must, it does not rebut defendants' summary judgment showing or raise issues of material fact concerning their involvement (or lack of involvement) relating to Heracles's property. Thus, Alexandros has not shown issues with regard to his quiet title or slander of title causes of action for a trier of fact's resolution.

30

The purpose of a quiet title action is to finally settle and determine parties' conflicting claims to property and to obtain a declaration of each party's interest. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 298; see § 761.020.) If the plaintiff does not prove a defendant's adverse claim to title, he or she cannot maintain a cause of action. (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 220.) " 'The elements of a cause of action for slander of title are "(1) a publication, (2) which is *without privilege* or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." ' " (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 434, fn. 14.) "If [a] publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.)

Alexandros's evidence focuses mainly on family dynamics, not specifics tending to rebut Demetrios and Coco's summary judgment sworn declarations. He points to Coco's deposition in which she explained how she felt Heracles was a good-hearted, giving person; that her family was the same; and that Walpert and any of her family members, including her, would lay down their lives for each other. He points to Coco's testimony that she did not consider Alexandros a family member. He points to her admission that she did not tell anyone, including adult protective services, about Heracles's alleged mistreatment even though the entire family knew about it. He references Coco's testimony that she was upset by Alexandros and his mother's asserted mistreatment of Heracles, and that Heracles should have just kicked Alexandros and his mother out of his house. Alexandros cites portions of Coco's declaration under penalty of perjury recounting Heracles's complaints about Alexandros and his former wife, as well as her view that

31

Alexandros "disrespect[ed] Heracles after his death" by cremating him, not speaking at his funeral, and holding some of the funeral services in Spanish. He also cites portions of Walpert's declaration in which Walpert states that at Heracles's request he assisted Heracles in changing his trust due to his disappointment with and mistreatment by Alexandros, denied suggesting the change or influencing Heracles to change his beneficiary, and watched Heracles sign the documents. Walpert made similar assertions as Coco about Alexandros's "disrespect" after Heracles's death.

Alexandros cites to portions of Demetrios's deposition in which Demetrios was shown evidence that Alexandros made payments for his father, and was then asked whether he felt Walpert should have the property over Alexandros. Demetrios answered: "I don't know because my brother signed the paper for [Walpert] to have the house. So this stuff here that I see now, I—I never saw them again and my brother didn't even talk to me about this stuff." He points to Demetrios's testimony that he did not "say anything" to Alexandros about the 2018 trust and its disposition of the property.

None of this evidence raises even an inference countering Demetrios and Coco's affirmative denials of involvement with the legal documents relating to the property, or any misstatements concerning the property. Alexandros's own evidence likewise does not rebut Demetrios and Coco's statements concerning their actions with respect to the property. He recounts family background, accuses Demetrios and Coco of lying and denies their claims of neglect and mistreatment. In short, Alexandros did not meet his burden so as to overcome summary judgment.

32

## DISPOSITION

The judgment is reversed and the matter remanded with directions that the trial court enter a new order overruling Demetrios and Coco's demurrer to Alexandros's financial elder abuse cause of action, and granting summary adjudication of Alexandros's quiet title and slander of title causes of action.  The parties shall bear their own costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.